## In re License of I. B. P. O. E. of W., John F. Moorland Lodge No. 801

*Jacob V.enger*, for appellant.

*G. W. Musser*, for Liquor Control Board.

WILSON, J., August 29, 1941.—The Aliquippa plant of the Jones & Laughlin Steel Corporation is located in the Borough of Aliquippa, with a population close to 30,000, many of whom belong to the colored race. The "I. B. P. O. E. of W., John F. Moorland Lodge No. 801" is the Colored Elks lodge in said borough, the member-

ship of which consists of a number of most estimable citizens. Their application for a club liquor license was refused by the Pennsylvania Liquor Control Board for the reason, among others, that the retail liquor and malt and brewed beverages licenses in said borough already exceeded the quota, as established by the Act of June 24, 1939, P. L. 806. Upon appeal we reversed the board and by our order of August 9, 1941, directed the license be issued. Since making said order our attention has been called to the conflicting opinions of the courts of quarter sessions within the Commonwealth, in their interpretations of the Act of 1939, hereinafter referred to as the "Quota Act." This supplementary opinion is written in the hope that we may bring order out of confusion.

The Act of June 16, 1937, P. L. 1762, is the Pennsylvania Liquor Control Act, and is hereinafter referred to as the "Liquor Act."

The Act of June 16, 1937, P. L. 1827, is the Beverage License Law, and is hereinafter referred to as the "Beverage Act."

These two acts, though declared to "re-enact and further amend the title and the act" of prior legislation, are complete within themselves, and between them, insofar as our inquiry goes, govern the manufacture and distribution of intoxicating liquors and beverages throughout the Commonwealth, under the administration and supervision of the Pennsylvania Liquor Control Board, with certain rights of appeal to the courts. In addition to the three acts already referred to, the Liquor Act, the Beverage Act, and the Quota Act, the only other act of assembly necessarily before us is the Statutory Construction Act of May 28, 1937, P. L. 1019.

The Liquor, Beverage, and Quota Acts use and define certain terms and expressions which must be well noted and compared, in order to arrive at the legislative intent of the Quota Act.

Under the Liquor Act retail licenses are issued which allow the licensee to dispense both liquor and malt and brewed beverages. Under the Beverage Act retail licenses are issued which allow the licensee to dispense malt and brewed beverages only. Hence, as the Liquor Act covers and includes the Beverage Act, it should be considered as the controlling act. Still, there are the two classes of licenses, liquor licenses and beverage licenses.

In the Liquor Act, "person" is defined to be "Every natural person, association, or corporation."

In the Beverage Act, "person" "means and includes natural persons, associations, partnerships and corporations."

In the Liquor Act, "association" "shall mean a partnership, limited partnership, or any form of unincorporated enterprise owned by two or more persons." We find no definition of "association" in the Beverage Act.

In the Liquor Act, "corporation" "shall mean a corporation or joint-stock association organized under the laws of this Commonwealth, the United States, or any other state, territory, or foreign country or dependency." We find no definition of "corporation" in the Beverage Act.

In both the Liquor and Beverage Acts, "hotel" shall mean any reputable place, operated by responsible persons of good repute, where the public may, for a consideration, obtain sleeping accommodations *with/and* meals.

In the Liquor Act, "club" "shall mean any reputable group of individuals associated together not for profit for legitimate purposes of mutual benefit, entertainment, fellowship or lawful convenience, having some primary interest and activity to which the sale of liquor shall only be secondary", and its definition is substantially the same in the Beverage Act.

In both the Liquor Act and the Beverage Act, "The term 'sale' or 'sell' shall include any transfer of liquor,

alcohol, or malt or brewed beverages for a consideration." In club licenses both acts restrict sales to club members only.

As to the granting of licenses, section 401 of the Liquor Act provides, in part, as follows:

". . . the board [Pennsylvania Liquor Control Board] shall have authority to issue a liquor license for any premises kept or operated by a hotel, restaurant or club . . . to purchase liquor from a Pennsylvania Liquor Store . . . to sell the same, and also malt or brewed beverages, to guests, patrons or members for consumption on . . . the . . . premises. . . . Such licenses shall be known as hotel liquor licenses, restaurant liquor licenses, and club liquor licenses, respectively."

Section 403 provides:

". . . the board *shall*, in the case of a hotel or restaurant, grant and issue to the applicant a liquor license, and in the case of a club, *may*, in its discretion, issue a license." (Italics added.)

Section 6 of the Beverage Act, provides, in part, as follows:

". . . upon being satisfied of the truth of the statements in the application . . . that the applicant seeks a license for a reputable hotel, eating place or club . . . the board *shall*, in the case of a hotel or eating place, grant and issue, and, in the case of a club, *may*, in its absolute discretion, grant and issue, to the applicant a retail dispenser's license." (Italics added.)

(Throughout this opinion we are using "eating place", in the Beverage Act, as interchangeable and synonymous with "restaurant", as used in the Liquor Act. No distinction is called for in the present discussion; and when we speak of "restaurant licenses" we mean both "restaurant liquor licenses" and "eating place" beverages licenses, unless otherwise indicated. In this way we may keep our argument clear of confusion.)

Both the Liquor Act and the Beverage Act provide that, upon the refusal of any license, the applicant may appeal to the court of quarter sessions, which shall hear the case de novo. "The court shall either sustain the refusal of the board or order the issuance of the license to the applicant. There shall be no further appeal."

Applicants for club licenses are not excepted from the right of appeal, and, having such right, the expressions as to the discretion of the board as to club licenses are meaningless, as, upon appeal, discretion is then in the court of quarter sessions.

As it was mandatory on the board to grant any number of hotel and restaurant licenses, they grew to such proportions as to constitute a social menace. Therefore, to in some measure curb the evil the legislature passed the Quota Act of 1939.

The title of the act is:

"An act limiting the number of licenses for the retail sale of liquor, malt or brewed beverages, or malt and brewed beverages, to be issued by the Pennsylvania Liquor Control Board; defining hotels, and prescribing the accommodations required of hotels in certain municipalities."

After redefining "hotel", with respect to population and bedrooms, the act continues:

"The word 'person' shall mean every natural person, association or corporation.

"The word 'municipality' shall mean any city, borough, incorporated town, or township.

"Section 2. No licenses shall hereafter be granted by the Pennsylvania Liquor Control Board for the retail sale of malt or brewed beverages, or the retail sale of liquor and malt or brewed beverages, in excess of one of such licenses, *of any class*, for each one thousand inhabitants or fraction thereof, in any municipality, *exclusive of licenses granted to hotels, as defined in this act, and clubs;* but at least one such license may be granted in each municipality, except in municipalities

where the electors have voted against the granting of any retail licenses. Nothing contained in this section shall be construed as denying the right to the Pennsylvania Liquor Control Board to renew or to transfer existing retail licenses of any class, notwithstanding that the number of such licensed places in a municipality shall exceed the limitation hereinbefore prescribed; *but where such number exceeds the limitation prescribed by this act, no new license, except for hotels as defined in this act, shall be granted so long as said limitation is exceeded.*" (Italics supplied.)

From the title and the context the words "in excess of one of such licenses, *of any class,* for each one thousand inhabitants or fraction thereof," refer to the two classes of licenses, liquor licenses under the Liquor Act, and beverage licenses under the Beverage Act, and mean that the quota is to be calculated on the total of such two classes. Even if such total exceeds the quota by but one beverage license, no new license of either class can be granted by the board, and should not be ordered issued by the court.

The question still remains: Shall club licenses of either class be included in the calculation of the quota? Our opinion is that they should not. The Quota Act must be considered as a part of and amendment to the Liquor and Beverage Acts. Also we must presume that the legislature is a continuing intelligent entity, which acts in character, consistently with its past. The title of the Quota Act gives no notice of an intention to include clubs, and section 1 specifically considers only "hotels" and "persons". "Person" is defined in the exact words of the Liquor Act; and the Liquor Act, by its specific definitions of "association", "corporation", and "club", clearly indicates that "club" cannot be included in the meaning of either "association" or "corporation". As the distribution of liquor and beverages by clubs is restricted to members, and in the light of the history of and decisions ruling liquor and clubs,

wherein such distribution to members was not a technical sale, it is doubtful if "clubs" "sell" liquor or beverages to their members. In former times the money passed over the bar of a club was a mere counter of the withdrawal of a member's share in a common stock, and which was used to replenish such stock. We are convinced that the Quota Act does not and was not intended to apply to clubs, and that, if "club•licenses" are included within its provisions, it is unconstitutional, the title being defective and in contravention of article III, sec. 3, of the Constitution. As said Quota Act, in effect, only limits the number of new restaurant licenses, it is therefore constitutional. The opinion of President Judge Keller, in Kester's Appeal, 140 Pa. Superior Ct. 293, goes no farther than this, as the matter before the court was a restaurant liquor license.

We hold to the opinion that club licenses would not be within the Quota Act had the word "clubs" not appeared in the first sentence of section 2. The word "clubs", appearing as it does in said first sentence, makes certain our conclusion.

But the further question arises: If club licenses are not within the Quota Act, what is the meaning and intention of the closing words of the second sentence of section 2, that ". . . where such number exceeds the *limitation prescribed by this act*, no new license, except for hotels as defined in this act, shall be granted so long as said limitation is exceeded"? As we have already stated, "the limitation prescribed by this act" applies only to restaurant licenses; the limitation prescribed is the first sentence of section 2; and the "limitation prescribed" expressly excludes "clubs" in such limitation.

The concluding words of the second sentence of section 2, that "no new license, except for hotels . . . shall be granted so long as said limitation is exceeded," are neither confusing nor ambiguous, nor do they contradict the limitation prescribed in the first sentence of

said section, as the limitation goes only to restaurant licenses. If the legislature had some undisclosed, concealed, devious, and subtle intent in omitting the word "clubs" from the second sentence of section 2, as the expressed intention of the first sentence is to limit the number of restaurant licenses, it is a reasonable deduction that if club licenses are to be included in the calculation of the quota they are only to be included in considering new restaurant licenses. In our opinion in Lorincz's Appeal, 37 D. & C. 322, in which, for equitable reasons, we held the Quota Act not applicable, we said: "reduction of licensees down to and within the quota would come through the process of weeding out improper places and persons." The Quota Act, as we are interpreting it, facilitates this weeding-out process, as the more licensed clubs the less licensed restaurants; if people are going to partake of intoxicants, the substitution of a well-conducted club of men for the ordinary licensed restaurant, as usually conducted, is wise public policy and a proper use of the police power; and, as superfluous restaurant licenses can be renewed and transferred, to bring such licenses within or below the quota should be the objective of all current liquor legislation. With renewal and transfer of restaurant licenses, even those in excess of the quota approach the immortal. There is certainly no intent that such should forever bar the licensing of a reputable club. Rather it is the intention that the licensing of a reputable club should bar the licensing of a disreputable restaurant. Therefore, club licenses may be counted in calculating the quota for new restaurant licenses, but not counted in calculating the quota for new club licenses, for club licenses, of themselves, are not within the Quota Act. Thus, the Quota Act, as a whole, is consistent, and remedies the evil to be corrected. But the remedy under our indicated meaning of the Quota Act will be of slow growth; yet sometime, sometime the plague of licensed restaurants will abate; the final substitution of a club

for every restaurant is a consummation devoutly to be hoped; and the tired, sleepy and thirsty wayfaring man will again find refuge, solace, and peace in his inn.

As all applicants for retail liquor and beverage licenses may appeal from the refusal of the Liquor Control Board to the court of quarter sessions, from which there is no further appeal, such courts are then the final licensing authority, and the Quota Act does not alter this (see per curiam opinion in Lithuanian Beneficial Association's Club Liquor License Case, 142 Pa. Superior Ct. 556). But the questions we are considering are not entirely moot. The actions of the courts should not rest on whim, prejudice, and politics, but should rest on law. Therefore, it is no mere multiplying of words to further consider the Quota Act in the light of the Statutory Construction Act of May 28, 1937, P. L. 1019, sections 51 and 52 of which are as follows:

"Section 51. Construction of Laws; Legislative Intent Controls.—The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the Legislature. Every law shall be construed, if possible, to give effect to all its provisions.

"When the words of a law are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

"When the words of a law are not explicit, the intention of the Legislature may be ascertained by considering, among other matters—(1) the occasion and necessity for the law; (2) the circumstances under which it was enacted: (3) the mischief to be remedied; (4) the object to be attained; (5) the former law, if any, including other laws upon the same or similar subjects; (6) the consequences of a particular interpretation; (7) the contemporaneous legislative history; and (8) legislative and administrative interpretations of such law.

"Section 52. Presumptions in Ascertaining Legislative Intent.—In ascertaining the intention of the Legis-

lature in the enactment of a law, the courts may be guided by the following presumptions among others:

"(1) That the Legislature does not intend a result that is absurd, impossible of execution or unreasonable;

"(2) That the Legislature intends the entire statute to be effective and certain;

"(3) That the Legislature does not intend to violate the Constitution of the United States or of this Commonwealth;

"(4) That when a court of last resort has construed the language used in a law, the Legislature in subsequent laws on the same subject matter intend the same construction to be placed upon such language;

"(5) That the Legislature intends to favor the public interest as against any private interest."

Section 52 has been cited by several of our courts as supporting conclusions contrary to ours, in which we think they are in error. Subsection (3) and subsection (4), though in some measure material, may be disregarded. But under the facts before us, and conditions known to all, subsections (1), (2), and (5) have particular and direct significance. If club licenses are within the Quota Act, as contended for by the control board (see opinion of Attorney General Reno in Club Liquor License Quota, 36 D. & C. 225), then a license to the Colored Elks of Aliquippa is barred, possibly forever. Then such members as desire liquor, beverages, amusement, relaxation and companionship are forced to resort to hotels and restaurants, conducted and patronized by persons of both sexes and of different races and mould of mind, where they may not be welcome and where they will find none of the things they desire. The use of tables and booths, the licensing of amusements, nearly all of which border on the sexually suggestive, and the employment of young women as waitresses and bar maids (see Acts of 1941, no. 155 and no. 156, as to employment of females in hotels, tav-

erns, saloons, and eating houses) hardly improve the situation or make for peace and good order. That one beverage license, in excess of a quota including clubs, conducted at a place and in a manner offensive to the sensibilities of colored people should, for an indeterminable number of years, bar respectable colored citizens from getting a club license, is a result absurd and unreasonable and, under subsection (1), was not the intention of the legislature. That restaurant licenses suitable to the accommodation and entertainment of people of the colored race may be issued is no answer, as such are and will be barred by the quota, regardless of how the Quota Act is interpreted. To require hotels to meet the situation is an equally untenable position.

As to subsection (2), we have made an interpretation of the Quota Act which renders the entire statute effective and certain.

As to subsection (5), the licensing of hotels and restaurants, to the exclusion of reputable clubs, favors private interest as against public interest, and the presumption is that such was not the intention of the legislature. Alcoholic liquors have always been considered as nuisances and their control given to the police power, to be exercised by the legislature: Spankard's Liquor License Case, 138 Pa. Superior Ct. 251. To have alcoholic beverages dispensed to men, in a well-conducted club, rather than in resorts of the present number and character, conducted for private profit, is certainly in the public interest.

The bearing of section 51 of the Statutory Construction Act on the interpretation of the Quota Act is additionally persuasive, though it seems to have been overlooked by our fellow-judges of the quarter sessions. We have already called attention: (1) To the occasion and necessity of the law; (2) to the circumstances under which it was enacted; (3) to the mischief to be remedied; (4) to the object to be attained; (5) to the former law; (6) to the consequences of particular in-

terpretations; (7) to the legislative history, incidentally, and (8) to legislative and administrative interpretation. (Legislative interpretation was made by a law passed by the 1941 legislature and vetoed by the Governor, which, after defining clubs, excluded them from the quota.)

We can find nothing to support the position of the Pennsylvania Liquor Control Board. We are convinced that the number of club licenses is not within the Quota Act, except as to determining the number of restaurant licenses to be granted.

If the Colored Elks of Aliquippa are not within the quota, then no club is. But the granting of club licenses by the board is not mandatory, as with hotels and with restaurants when within the quota, but permissive and discretionary, with review by the court of quarter sessions upon appeal from a refusal by the board. Therefore, the board and the courts may keep licensed clubs within proper limits. Situations similar to the one before us may arise in any county of the Commonwealth. Certainly it was not the intention of the legislature to grant the board discretion and vest the courts with both discretion and power, and then so hedge their uses that neither board nor court can either curb evil or administer the liquor laws in the way best suited to the circumstances. Every citizen of Pennsylvania knows that if the number, location, and conduct of restaurant licenses are not drastically reduced, altered, and restrained, prohibition, with all its depravity and crime, is on the way back. This was the mountain confronting the legislature, which gave birth to the quota mouse. Even our interpretation gives only a promise of improvement. To include clubs in the quota, instead of curbing the real dangers, works the reverse, and further extends and perpetuates the criminal privileges of perverted restaurant licensees. We are interpreting the Quota Act in accord with its avowed purpose. If the liquor lobby inserted a snake it is our duty to scotch it.

Though not relevant, it is here pertinent to say that since passage of the Quota Act, in order to avoid its limitation on restaurant licenses, the requisite bedrooms are provided and an application made for a hotel liquor license. The probability that there ever will be an honest lodger in such places is so remote as to be ridiculous. So the quota is set at naught, drinking places are multiplied, with reduced earnings, and with at least six furnished and unnecessary bedrooms. Add to this dancing, floor shows, lowered lights, booths, indiscriminate concourse and drinking of hard liquor, and we have the answer to the bedrooms. Such places, and no quota or discretion, are descending spirals of corruption, vice, and disease, all baited for the young.

Alcohol, like sex, is less a question than a condition. Alcohol is personal and local, and general law is difficult of application. Hence the legislature has wisely constituted the courts of quarter sessions of the peace the license supervisors of their communities. We have written this opinion in recognition of law and of our obligation to disclose the reasons supporting our rulings. In our original opinion in this appeal we said: "We have held and still hold to the opinion that the 'quota' does not apply to club licenses."

Since writing this supplementary opinion, the Deputy Attorney General representing the Liquor Control Board has sent us a number of unreported decisions of our fellow-judges of the quarter sessions, together with a petition praying a rule on appellant to show cause why our order of August 9, 1941, directing the license to be issued, should not be vacated, set aside, and the appeal dismissed. We have carefully examined all of said opinions and find no sufficient grounds to reverse our opinion. For the reasons herein set forth we believe modification or reversal should come from those who dissent from us. Therefore, the issuing of the rule and argument thereon would be gracious—but futile. The petition of the Deputy Attorney General will be

filed, with an order refusing the prayer, together with this opinion, a copy of which we have mailed to the Deputy Attorney General.

### Order

And now, August 29, 1941, for the reasons appearing in the foregoing opinion rule to show cause is refused, and petition praying same dismissed.