## Spankard's Liquor License Case.

Argued October 23, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Adolph Goldberg,* with him *Virgil N. Caputo,* and *William R. Kalson,* for appellant.

*Horace A. Segelbaum,* Deputy Attorney General, with him *Claude T. Reno,* Attorney General, for appellee.

OPINION BY KELLER, P. J., January 30, 1940:

On June 13, 1939, the Pennsylvania Liquor Control Board refused the application of Joe Spankard for a restaurant liquor license at 818 Wylie Avenue, Pittsburgh, for the following reasons:

"(1)   The applicant has been the real owner of this business for some time although the license has been in the name of his brother [James Spankard].

"(2)   The applicant was arrested in 1933 and 1938, although these arrests were not set forth on his application."

Thereupon, on June 15, 1939, Spankard appealed from such refusal to the Court of Quarter Sessions of Allegheny County, by petition, as directed in the Act of June 16, 1937, P. L. 1762, sec. 404, p. 1780, averring that said refusal was unlawful, unfair and without justification. A hearing was duly had by the court, pursuant to the statute aforesaid, on June 28, 1939, at which the applicant, his attorney and an attorney for the Board were present.

Testimony was produced on behalf of the Board tending to substantiate the matters presented as grounds for refusing the license, to wit, that, contrary to the averments in his application, Joe Spankard had been arrested in 1933, for violating the Snyder Liquor Act (Act of February 19, 1926, P. L. 16), and on April 11, 1938, for obstructing process and inciting to riot; and

that from October 1937 he had been concerned with his brother, James Spankard, in the operation of the place under the license held by his brother.

On the other hand the applicant produced testimony tending to show that he had lent his brother money and that during his brother's absence from the State on account of illness, he had carried on the business *for him;* and that on May 1, 1939 his brother had turned the place over to him in payment of his debt; and that he had signed the application without reading it, after the man who filled it up [not naming him] had told him it was unnecessary to mention any arrests over three years old.

On July 13, 1939, the court made the following order:

"And now, to wit, July 13, 1939, the appeal of Joe Spankard from the action of the Pennsylvania Liquor Control Board refusing to grant a Restaurant Liquor License for the premises situate at 818 Wylie Avenue, Pittsburgh, Pa., is hereby dismissed at the cost of appellant."

On September 5, 1939, the court filed the following opinion:

"This appeal came on for hearing June 28, 1939, four days after the effective date of the Act of the General Assembly No. 358, approved the 24th day of June, 1939 [P. L. 806] limiting the number of licenses for the retail sale of liquor, malt or brewed beverages to be issued by the Pennsylvania Liquor Control Board to one for each one thousand inhabitants or fraction thereof in any municipality exclusive of licenses granted to hotels and clubs. As the number of retail liquor licenses in the city of Pittsburgh on June 28, 1939, was in excess of one of such licenses for each one thousand inhabitants or fraction thereof, the appeal was dismissed. See: In re Appeal of Catherine M. Ross, trading as Standard Restaurant, from the order of the Pennsylvania Liquor Control Board, No. 67 June Sessions,

1939, in the Court of Quarter Sessions of Allegheny County.

"We might add that we would have been disposed to reverse the Liquor Control Board and order them to issue a license in this case on the merits had the case been heard prior to June 24, 1939."

The applicant appealed to this court.

Appellant raises three legal questions:

(1) Was the dismissal of his appeal equivalent to an order sustaining the refusal of the Board to issue the license?

(2) Does an appeal lie to this court from that order?

(3) Was the dismissal of his appeal by the court, based on the Act of June 24, 1939, P. L. 806, sustainable under said Act, in view of the fact that his application had been filed and refused and his appeal from such refusal had been taken and was pending in court, when the Act was passed and became effective on June 24, 1939.

(1) We are of opinion that the order dismissing the appeal was the practical equivalent of an order sustaining the *action* of the Board refusing to issue the license; just as an order dismissing an appeal in this court amounts, in its practical effect, to an affirmance of the *judgment* of the court below, when there are reasons why the dismissal of the appeal is, in the circumstances of the case, deemed a more appropriate judgment. In this case the court below stated that were it not for the Act of 1939, supra, it would have been disposed to order the license to issue. Accordingly it sustained the refusal of the Board to issue the license, by dismissing the appeal, but did so because of the mandatory provisions of the Act of 1939, and not for the reasons given by the Board. It certainly was not an order directing the issuance of the license and the effect of the order is to refuse the license. We call attention to the fact that under the Act of 1937, supra, the hearing in the

Quarter Sessions on appeal is de novo, and that the court may sustain the refusal of a license for different reasons from those given by the Board or for reasons additional to those stated by the Board.

(2) For the reasons stated at length in *McGettigan's Liquor License Case,* 131 Pa. Superior Ct. 280, 200 A. 213, and not necessary to be restated, we are of opinion that an *appeal* from the order of the court of Quarter Sessions does not lie, whether the order sustains the refusal of a license or orders its issuance. Section 404 of the Pennsylvania Liquor Control Act of June 16, 1937, P. L. 1762, 47 PS sec. 744-404, which authorizes an appeal from the board to the court of quarter sessions, provides: "There shall be no further appeal." It applies to all cases where appeals are taken from the board to the court of quarter sessions from a refusal to issue a license, renewal or transfer. As was pointed out by Chief Justice KEPHART in the case of *Grime v. Dept. of Public Instruction,* 324 Pa. 371, 375, 378, 188 A. 337, "where a statute is silent on the right of appeal, this court may review the case in the broadest sense allowed on certiorari; but where an appeal is expressly denied or it is provided that the action of the court below shall be final, our appellate review will be limited to questions of jurisdiction and those relating to the regularity of the proceedings . . . . . . Even if its [the lower court's] construction of the statute had been erroneous, it is the final court of appeal in such matters."

The court of quarter sessions had jurisdiction, for it was expressly committed to it by statute, (*Grime v. Dept. of Public Instruction,* supra, pp. 377, 378) and the proceedings were regular. The appeal must therefore be dismissed.

(3) Strictly speaking, the above ruling disposes of the case, but just as the Supreme Court, in the Grime case, supra, (p. 378) in order "to avoid future conflicts," discussed the contention of the appellants, so here, in

view of the fact that there are conflicting decisions in different courts of quarter sessions, we will give our reasons why we are in accord with the ruling of the court below.

The main purpose of the Act of June 24, 1939 was to limit the number of licenses *to be issued thereafter* [that is, after the effective date of the Act, June 24, 1939] by the Liquor Control Board, for the retail sale of malt or brewed beverages, or the retail sale of liquors and malt or brewed beverages, to one license for each one thousand inhabitants or fraction thereof in any city, borough, incorporated town or township; but it authorizes *one* license for every such municipality, even though there are not one thousand inhabitants in it, except where the electors have voted against the granting of any retail licenses. It is clearly a restrictive measure, applying to all licenses not issued by June 24, 1939; for the only exception to its scope and effect is, "nothing contained in this section shall be construed as denying the right to the Pennsylvania Liquor Control Board to *renew* or to *transfer existing* retail licenses of any class, notwithstanding that the number of such licensed places in a municipality shall exceed the limitation hereinbefore prescribed; but where such number exceeds the limitation prescribed by this act, *no new license,* except for hotels as defined in this act, *shall be granted* so long as said limitation is exceeded." (Italics supplied).

Appellant contends that the Act should not apply to applications for license which were pending and undisposed of on the effective date of the Act, which was, "immediately upon final enactment"; but the statute makes no such exception. It expressly forbids the granting of any such new license, after June 24, 1939, in excess of the ratio fixed by the Act, and includes no saving clause affecting pending applications.

Appellant further contends that it is a settled rule of statutory construction, recognized by the Statutory

Construction Act (Act of May 28, 1937, P. L. 1019, sec. 56) that "No law shall be construed to be retroactive unless clearly and manifestly so intended by the Legislature." But the construction of the court below does not give any retroactive effect to the statute; it only does what the Act expressly provides, it puts the Act into *immediate* effect upon final enactment.

Appellant's error is in treating the matter as if an *applicant* for a retail liquor license, by filing his application, obtained a *contract or property right,* which could not be taken away from him by the legislature without making compensation to him. The filing of such an application gives a person no contract or property rights at all: *Fanning's License,* 23 Pa. Superior Ct. 622, 628; *Cochran's License,* 47 Pa. Superior Ct. 376, 381. In the former case this court said: "It has been frequently said by our Supreme Court that no man has a right to a license." In the latter, "The applicant has no absolute right to a license, although complying with the statutory requirements, but he has a right to a hearing and decision on his application." See also *Keiper's License,* 21 Pa. Superior Ct. 512, 516. In *Raudenbusch's Petition,* 120 Pa. 328, 340, 342, 14 A. 148, Mr. Justice, afterwards Chief Justice PAXSON, speaking for the court, said: "The petitioner assumes that he is entitled as a matter of right to a license, upon complying with the provisions of the act of 1887, in the absence of any allegation that he is an improper person to be so licensed. This is the fallacy which underlies his case, as well as the able argument of his learned counsel. He has no such absolute right, nor has any other man in the commonwealth ...... *Neither the petitioner nor any other person in this state has any property in the right to sell liquor."* (Italics supplied). Whether any license shall be granted, and what licenses shall be granted are legislative questions (*Schlaudecker v. Marshall,* 72 Pa. 200, 206)

and subject at all times to the control of the legislature. A liquor license, even when granted, is not a property right. It is only a privilege: *Grime v. Dept. of Public Instruction,* supra, pp. 381, 384; *Harris v. State Board,* 287 Pa. 531, 538, 539, 135 A. 237; *Blumenthal's Petition,* 125 Pa. 412, 415, 18 A. 395; *Buck's Est.,* 185 Pa. 57, 60, 39 A. 821; *Mueller's Est.,* 190 Pa. 601, 603, 42 A. 1021; *Beer Co. v. Mass.,* 97 U. S. 25, 33. It may be taken away by the governing authorities without compensation to the holder. It was done throughout this entire country by the Eighteenth Amendment to the Federal Constitution, and the Twenty-first Amendment, which repealed the Eighteenth, expressly reserved to the states the right to prohibit the manufacture, possession, sale and importation of intoxicating liquors within their respective borders: *Com. v. One Dodge Motor Truck,* 123 Pa. Superior Ct. 311, 334, 187 A. 461, affirmed 326 Pa. 120, 191 A. 590; *Com. v. Stofchek,* 322 Pa. 513, 185 A. 840. A state may adopt a lesser degree of regulation than total prohibition: *State Board v. Young's Market,* 299 U. S. 59, 63. It may regulate the transportation, etc., of intoxicating liquors within its borders no less than prohibit their manufacture, sale and possession: *Ziffrin, Inc. v. Reeves,* 308 U. S. 132. The regulation of the sale of intoxicating liquors is a matter peculiarly within the police power of the several states, because of the evils which result from the uncontrolled traffic in them. Our Liquor Control Act of June 16, 1937, P. L. 1762, in Article V, pp. 1792-3, expressly authorizes the electors of a municipality to determine by election held (but not oftener than once in four years), whether liquor licenses shall be granted by the board to hotels, restaurants and clubs within the limits of such municipality; and where the electors have voted against such sale, it is provided that, "then the board shall thereafter have no power to grant or to renew upon their expiration,

any liquor licenses in such municipality or township, under the provisions of this act, unless and until the people therein shall, at a later time, have again voted on the question and decided in the affirmative." Nothing is said in that act, either, about pending applications, but no one would seriously contend that it did not apply to and forbid the grant of licenses to such applicants.

We are satisfied that the Act of 1939, supra, means just what it says, viz., "No licenses shall hereafter [that is, after June 24, 1939, see section 5] be granted by the Pennsylvania Liquor Control Board for the retail sale of malt or brewed beverages, or the retail sale of liquor and malt or brewed beverages, in excess of one of such licenses, of any class, for each one thousand inhabitants or fraction thereof, in any municipality, exclusive of licenses granted to hotels as defined in this act, and clubs." This is followed by a clause retaining to the board the right to *renew or transfer* retail licenses existing on June 24, 1939, notwithstanding that the number of such licensed places shall exceed the limit prescribed; and then it provides: "but where such number [that is, of licenses existing on the date the act went into effect, June 24, 1939] exceeds the limitation prescribed by this act, *no new license,* except for hotels as defined in this act, *shall be granted so long as said limitation is exceeded."* (Italics supplied).

There is no dispute as to the facts, (1) that on June 24, 1939, no license had been issued to appellant, and (2) that the licenses already granted by the board and existing in the City of Pittsburgh on that date exceeded one for each thousand inhabitants. It follows that the board was without statutory authority to issue a license to appellant until the ratio of licenses to inhabitants became less than one to a thousand, and the learned court below correctly so ruled.

Appeal dismissed.