# Appeal of Legion Home Association of Danville

*Richard Henry Klein,* for appellant.

*Spencer W. Hill,* for Commonwealth.

KREISHER, P. J., May 29, 1943.—The Legion Home Association of Danville, Pa., for many years maintained a few small crowded second-floor clubrooms in the business section of Danville. Last year, in order to give their members a better place to meet, they purchased a large brick building on the outskirts of the

borough, known as Maple Hall, which enjoyed the privilege of a liquor license granted by the Pennsylvania Liquor Control Board, as well as a rather disreputable existence. The Legion did not request the transfer of the license from the grantors, which they could have done and no doubt would have been granted, but rather, after making considerable repairs and improvement, filed an application with the Liquor Control Board for a new club liquor license. A hearing was held upon the said application before an examiner of the Liquor Control Board, after which the Liquor Control Board filed an opinion refusing to grant a club liquor license to the applicant. In its order refusing to grant the license the board gave only one reason for refusing the license, and that reason was as follows:

"1. The quota of licenses for this municipality is exceeded. Therefore, the board is prohibited, under the provisions of the Quota Law, from issuing any new licenses, except for hotels meeting the physical requirements prescribed by the Quota Law."

The board did state that protests were filed with the board and that protestants appeared at the hearing and testified that they were opposed to the issuance of the license on the ground that there are already too many licenses in the locality, but the board did not assign these protests as a reason for refusing the issuance of the license. The board, therefore, was not exercising its discretion on matters of fact in its refusal, but rested solely on the matter of law as found in the Liquor License Quota Act of June 24, 1939, P. L. 806.

At the time of argument it was agreed that the quota for licenses in Danville is exceeded. It was also agreed that the only question before the court is whether or not the Liquor Control Board may grant a club liquor license to an applicant after the quota of licenses for the municipality, as fixed by the Liquor License Quota Act of June 24, 1939, P. L. 806, 47 PS §744-1002, is exceeded.

There were a number of witnesses present in court ready and willing to testify for and against the issuance of this license. However, we ruled, even though the hearing before the court is de novo, that since the board only assigned one reason, viz, the Liquor License Quota Act, for its action, all other matters of fact were not before the court on this appeal and the appeal must be decided purely as a matter of law in the interpretation of the Liquor License Quota Act. This being so, we did not hear any witnesses and will not consider the question of protests or the exercise of discretion by the board.

We purposely refrained from writing this opinion during the current session of the legislature, hoping that our law-making body in Pennsylvania would give us a legislative interpretation of the act in question, so that the confusion now existing in our courts would be cleared up. (The 1941 legislature passed such an act, but our Governor at that time saw fit to veto the act.) The legislature has now adjourned and has failed to remedy the situation, as the above-cited act was not repealed or amended.

The act in question became law on June 24, 1939, and since that time, which is comparatively short, the various courts of quarter sessions in Pennsylvania have been called upon at least 50 times to interpret and apply the act.

In re Appeal of Fogarty, 34 Luz. L. Reg. 16, concerns an application for a restaurant liquor license after the quota was exceeded. The license was, of course, refused for reasons which appear in the act and are not applicable to an application for a club liquor license.

In Appeal of Loggia Nuova Giuseppe Verdi, No. 1483, 46 D. & C. 87, Northumberland County, the appeal was dismissed because it was premature, having been taken before a hearing was held by the board. Therefore, this case has no bearing on the case at bar.

Horton Township Sportsmen's Club's License, Elk County, 41 D. & C. 261, Muhlenberg Sportsmen's Club's License, Berks County, 43 D. & C. 408, and Slavonic American Club, 8 October sessions, 1942, Columbia County, are three cases where the courts have been called upon to construe the Liquor License Quota Act involving club liquor license applications where the quota was exactly equalled but not exceeded. These three cases are not applicable where, as in the case at bar, the quota is actually exceeded. However, these cases do indicate that the courts faced with the interpretation of the Liquor License Quota Act have uniformly held that the act should be liberally, rather than strictly, construed.

Of the remaining 45 cases, 24 have decided that the Liquor License Quota Act does not apply to applications for club licenses and does not limit the number of such licenses which may be granted by the board. These 24 cases were decided in eight different counties, viz: Allegheny, 5; Beaver, 1; Lackawanna, 2; Luzerne, 10; Northampton, 1; Schuylkill, 2; Washington 1; and Northumberland, 2.

The remaining 21 cases, including an opinion by Attorney General Claude T. Reno, have decided that the Liquor License Quota Act does restrict the number of club licenses which may be granted and have sustained on appeal the Liquor Control Board's refusal to grant such club licenses after the quota is exceeded. These 21 cases were decided in 17 different counties, viz: Allegheny, 1; Bedford, 1; Bucks, 1; Dauphin, 1; Delaware, 1; Fayette, 2; Lancaster, 1; Lawrence, 1; Lehigh, 1; Luzerne, 1; Montgomery, 1; Northumberland, 1; Philadelphia, 3; Venango, 1; Westmoreland, 1; Wyoming, 1; and York, 1.

We do not deem it necessary to cite all these cases above mentioned. However, it will be noted that in Allegheny, Luzerne, and Westmoreland Counties there are decisions of the courts both ways, but in these three counties a majority of the opinions are in favor of the

contention that club licenses are not within the Liquor License Quota Act.

From an examination of the cases holding that club licenses are within the Liquor License Quota Act, we find they are unanimous in result only, not in the reasons assigned nor the arguments presented. It will be noted that in some of the cases the courts very properly sustained the appeal because the applicant was not a bona fide club, but rather what is known as a one-man club seeking club privileges by a mere scheme or subterfuge. Such is not our case, as this applicant is an organization established more than 18 years ago, with its membership made up of the best citizens in the community, men who fought to preserve our American way of life and who have always assumed the burden of all civic activities. They now wish to have decent, comfortable accommodations, not only for their present membership, but also for the many sons and brothers who are now fighting all over the world for our country when they return victorious. The application here is not a scheme or subterfuge to escape the Liquor License Quota Act for, as we said before, the applicant could have requested the transfer of the license which was held by the man they purchased the building from. The issuance of a license to this applicant would not increase the number of licensed establishments in the municipality; in fact the action of this applicant brought to an end a very disreputable place, and they are now endeavoring to create a clean, beautiful, respectable place in its stead, where its members may meet, relax and enjoy the companionship of one another in the privacy of their own club. Likewise, club privileges are restricted to club members, and therefore the action of this applicant has in effect closed an establishment heretofore open to the public and has reduced the public licensed places by one.

The Liquor Control Board refused to issue a license to this applicant because of the Liquor License Quota Act of June 24, 1939, P. L. 806, sec. 2, which provides:

"No licenses shall hereafter be granted by the Pennsylvania Liquor Control Board for the retail sale of malt or brewed beverages, or the retail sale of liquor and malt or brewed beverages, in excess of one of such licenses, of any class, for each one thousand inhabitants or fraction thereof, in any municipality, exclusive of licenses granted to hotels, as defined in this act, and clubs; but at least one such license may be granted in each municipality, except in municipalities where the electors have voted against the granting of any retail licenses. Nothing contained in this section shall be construed as denying the right to the Pennsylvania Liquor Control Board to renew or to transfer existing retail licenses of any class, notwithstanding that the number of such licensed places in a municipality shall exceed the limitation hereinbefore prescribed; but where such number exceeds the limitation prescribed by this act, no new license, except for hotels as defined in this act, shall be granted so long as said limitation is exceeded."

The first part of the act deals with the manner in which the quota shall be computed. It seems clear to us that hotels and clubs shall not be counted in determining the quota. It likewise seems clear that the words "of any class" refer to all classes, so that both beverage licenses and liquor licenses shall be added together in counting the quota.

The next section of the act relates to the transfer of existing licenses as not being within the act, which we have already mentioned.

The last section of the act is the part that has caused the confusion and dissension. We believe that it is necessary to examine the Pennsylvania Liquor Control Act and the Beverage License Law with regard to clubs in order to interpret properly the Liquor License Quota Act with respect to the issuance of club licenses. Such an examination reveals that the word "club shall mean any reputable group of individuals asso-

ciated together not for profit but for legitimate purposes of mutual benefit, entertainment, fellowship or lawful convenience, having some primary interest and activity to which the sale of liquor shall be only secondary." There is no doubt that the applicant in this case meets the requirements of the definition above quoted.

Both the Pennsylvania Liquor Control Act and the Beverage License Law define the terms "sale" or "sell" as "any transfer of liquor, alcohol or malt or brewed beverages for a consideration." Both acts in the case of club licenses restrict sales to club members only.

The Pennsylvania Liquor Control Act of June 16, 1937, P. L. 1762, sec. 403, provides:

". . . the board *shall,* in the case of a hotel or restaurant, grant and issue to the applicant a liquor license, and in the case of a club, *may, in its discretion,* issue a license . . ." (Italics supplied.)

The Beverage License Law of June 16, 1937, P. L. 1827, sec. 6(*a*), provides, in part, as follows:

". . . upon being satisfied of the truth of the statements in the application . . . that the applicant seeks a license for a reputable hotel, eating place or club . . . the board *shall,* in the case of a hotel or eating place, grant and issue, and, in the case of a club, *may, in its absolute discretion,* grant and issue, to the applicant a retail dispenser's license." (Italics supplied.)

We at once observe that it was mandatory on the board to grant any number of hotel and restaurant licenses, so long as they complied with the requirements of the act, and therefore their numbers increased to such an extent as to create a nuisance and, in order to remedy this situation, the legislature enacted the Liquor License Quota Act. It follows that the evil which the legislature desired to remedy by the Liquor License Quota Act was to limit the mandatory duty of the board with respect to restaurant and eating place licenses, in other words the corner saloon. This

same evil did not exist with respect to clubs because neither the Pennsylvania Liquor Control Act nor the Beverage License Law made the issuance of club licenses mandatory, but rather left the matter entirely in the absolute discretion of the board, and the board has the right under the law to exercise this discretion.

Both the Pennsylvania Liquor Control Act and the Beverage License Law provide that, upon the refusal of any license, the applicant may appeal to the court of quarter sessions, which shall hear the case de novo. This right of appeal is given to all applicants. However, in the case of the board refusing to issue a club license, the court must be satisfied that the board acted unlawfully or grossly abused its discretion before reversing the board's action. Our courts have almost uniformly held that the section of the act giving the right of appeal to the court of quarter sessions does not intend that the said court of quarter sessions shall become an independent licensing authority, but only that the court shall ascertain whether or not the orders made by the Liquor Control Board are lawful, free from prejudice, abuse, bias and oppression. See Easton Athletic Club License, 27 Northampton 349, at page 351. This is especially true in the case of club licenses, because the acts give the board the power and authority to exercise its absolute discretion, and we most certainly would not interfere with the exercise of its discretion in the absence of gross abuse.

Let us consider the Liquor License Quota Act with respect to the issuance of club licenses in the light of the Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 51, which provides:

"The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the Legislature. Every law shall be construed, if possible, to give effect to all its provisions. . .

"When the words of a law are not explicit, the intention of the Legislature may be ascertained by consider-

ing, among other matters—(1) the occasion and necessity for the law; (2) the circumstances under which it was enacted; (3) the mischief to be remedied; (4) the object to be attained; (5) the former law, if any, including other laws upon the same or similar subjects; (6) the consequences of a particular interpretation; (7 ) the contemporaneous legislative history; and (8) legislative and administrative interpretations of such law."

Some courts have held that the words of the Liquor License Quota Act are explicit, and therefore the matters mentioned in section 51 of the Statutory Construction Act do not apply. We disagree with this contention, because we believe the matters mentioned in section 51 of the Statutory Construction Act should always be considered by the court in the interpretation of statutes, and we also are of the opinion that the words of the Liquor License Quota Act are not explicit, because in the first section of the act it excludes hotels and clubs and in the last section it excepts hotels only.

Now, applying the matters contained in section 51 of the Statutory Construction Act to the Liquor License Quota Act, it becomes obvious that club licenses are not within the Quota Act.

The first matter we have already discussed and are satisfied that there was no occasion or necessity for the Quota Act with respect to clubs, because both the Pennsylvania Liquor Control Act and the Beverage License Law already provided the Liquor Control Board with the power and authority to curb the licensing of clubs by making the issuance of club licenses permissive, but not mandatory.

The second matter, viz, the circumstances under which the law was enacted, indicates that club licenses were not within the act, because the Quota Act followed the enactment of the Liquor Control Act and Beverage License Law and was not deemed necessary until it developed that the mandatory provisions of

the prior acts were creating an overabundance of corner saloons, not an overabundance of bona fide clubs.

The third matter, that is the mischief to be remedied, we have discussed before, and it seems to us to be obvious that the mischief which the act was directed against was the public restaurant and eating place which was becoming so numerous in some localities that it was difficult for any one of them to operate a profitable establishment. This difficulty was certainly not true with clubs, and we know of no instance where clubs became so numerous as to cause a mischief to be remedied. If such a case should ever arise, the Liquor Control Board does not need the Quota Law to remedy the situation, as it had the remedy in both the Liquor Control Act and the Beverage License Law long before the Quota Act was ever enacted, and it still has that remedy, which is the exercise of its absolute discretion in the issuance of a club license, and if the facts substantiated its ruling the court should not, and this court would not, interfere with its order. It therefore follows that clubs could not become so numerous as to put public places out of business.

The fourth matter directs the court to consider the object to be attained by the act. We believe the object to be attained by the Quota Act was to place a limitation on the mandatory provisions in the Liquor Control Act and the Beverage License Law, so that the public establishments would have a sufficient distribution of population to be able to conduct a well-managed, respectable place at a profit. We cannot see any object to be attained by the Quota Act in regard to clubs. The legislature recognized the distinction between a club license and a restaurant or eating place license in the first section of the act and clearly stated that club licenses are not to be counted in figuring the quota. This indicates that the Quota Act applies only to restaurant and eating place licenses, because the quota is based on

one establishment for each 1,000 inhabitants and, since clubs and hotels are not to be counted in figuring the quota, the quota can always be filled with restaurant and eating place licenses, irrespective of the number of clubs or hotels in the municipality. It necessarily follows that the object to be attained by the Quota Act was to limit the public restaurants and eating places to one establishment for each 1,000 inhabitants or fraction thereof, without regard to hotels and clubs.

The fifth matter, viz, the former law, is not applicable, because there was no former law, nor are there any other laws upon the same or similar subjects.

The sixth matter, which relates to the consequences of the particular interpretation, has already been discussed and we fail to see how it is at all possible for any serious consequences to result from our interpretation. We do believe that our interpretation, especially in the case at bar, results in the promotion of community welfare. However, if the facts do not warrant the issuance of a club license because it would be detrimental to the community, or for some other honestly legitimate reason, then the board should exercise its discretion and it may refuse to issue the license.

We are not unmindful of the scholarly opinion written by the late Judge Humes in the Lakewood Club case, wherein he stated:

"The leading case expressing a contrary view to the position we take is the Lithuanian Beneficial Association, supra, and while we admire the well considered and keen reasoning contained in that opinion, we cannot but believe that this reasoning was based on achieving a desired result, that it was rationalization of the conclusion reached, that it was merely the vehicle in which to ride to a predetermined destination."

We say that we have not based our reasoning on a desired result, because we are sure from the interest manifested in this case that it would have been good politics to have reached a contrary conclusion. We are

merely interpreting this statute in the way we believe it should be construed, and we are not alone in this interpretation for, as stated before, there have been 24 cases decided in accord with us and 21 cases decided contra.

The seventh matter, being the contemporaneous legislative history, is not applicable because this is a new act and has very little, if any, legislative history.

The eighth and last matter mentioned in section 51 deals with legislative and administrative interpretations of the law. We mentioned the opinion of the Attorney General, Claude T. Reno, wherein it was held that the Liquor License Quota Act does restrict the number of club licenses which may be granted. Likewise, we have also mentioned that the 1941 legislature, seeing the many misinterpretations which the various courts had placed upon their enactment, attempted to elucidate and give us a legislative interpretation of the Liquor License Quota Act by passing an act which specifically exempted clubs from the Quota Act. This act was vetoed by Governor James, but it is still helpful, inasmuch as it shows that the legislature intended to exempt clubs from the limitation of the Quota Act, and that their enactment of 1941 sought to overcome the confusion occasioned by the Quota Act with regard to clubs.

In In re License of I. B. P. O. E. of W., John F. Moorland Lodge No. 801, 42 D. & C. 222, Judge Wilson, in his opinion, at pages 227 and 228, states:

"The question still remains: Shall club licenses of either class be included in the calculation of the quota? Our opinion is that they should not. The Quota Act must be considered as a part of and amendment to the Liquor and Beverage Acts. Also we must presume that the legislature is a continuing intelligent entity, which acts in character, consistently with its past. The title of the Quota Act gives no notice of an intention to include clubs, and section 1 specifically considers

only 'hotels' and 'persons'. 'Person' is defined in the exact words of the Liquor Act; and the Liquor Act, by its specific definitions of 'association', 'corporation', and 'club', clearly indicates that 'club' cannot be included in the meaning of either 'association' or 'corporation'. As the distribution of liquor and beverages by clubs is restricted to members, and in the light of the history of and decisions ruling liquor and clubs, wherein such distribution to members was not a technical sale, it is doubtful if 'clubs' 'sell' liquor or beverages to their members. In former times the money passed over the bar of a club was a mere counter of the withdrawal of a member's share in a common stock, and which was used to replenish such stock. We are convinced that the Quota Act does not and was not intended to apply to clubs."

At pages 229, 230, 233, and 234 of his opinion Judge Wilson gives a very comprehensive and intelligent history of the liquor legislation, the necessity for the Liquor License Quota Act and the evils which were sought to be remedied by it. We agree with Judge Wilson that the particular evil sought to be remedied by the Quota Act was the unrestricted and uncontrolled issuance of a multitude of restaurant and eating place licenses which promised with its threat of depravity and crime to return to the evils of Prohibition. As we stated before, there is little dispute that bona fide hotels and clubs do not present this evil, which was apparent and growing in the issuance of restaurant and eating place licenses.

Several of the lower courts, notably York County and Lancaster County, have decided that no club licenses may be issued while the quota is exceeded, relying upon the opinion of the Superior Court of Pennsylvania in the matter of Spankard's Liquor License Case, 138 Pa. Superior Ct. 251. That appeal involved entirely different questions. It was dismissed because the Superior Court decided that no appeal lay, and then the

Superior Court produced four pages of dicta which are neither relevant, necessary, nor binding, inasmuch as the Superior Court, before it presented its dicta, stated that it had no authority to decide the issues it then discussed.

Several of the decisions which hold that the Liquor License Quota Act imposes a restriction on the number of club licenses which may be issued were of the opinion that the last section of the Quota Act, which makes a specific exception in the case of hotels but makes no mention of clubs, imposed a restriction by implication upon the issuance of club licenses after the quota was exceeded. Then they go on to state that this interpretation makes the act and the entire section consistent and effective so far as clubs are concerned. As a matter of fact, this interpretation results in an absurd situation.

In the leading case holding a contrary view from ours, viz, Appeal of the Country Club of Harrisburg, Dauphin County, January sessions, 1941, no. 342, Judge Sheely in a masterful opinion said:

"We do agree with the appellant that the statute causes what may be termed as an absurd condition since club licenses are not to be counted in determining whether a quota is exceeded, and there may be any number of club licenses issued so long as the quota is not filled. But when the quota is filled or exceeded no club license may thereafter be issued, even though there are no club licenses outstanding in the municipality . . . This, however, is a legislative problem."

We submit that it is obvious that no absurdity results from our interpretation of the act here in question.

Again we resort to the above-mentioned Statutory Construction Act and under section 52 we find the following provisions:

"In ascertaining the intention of the Legislature in the enactment of a law, the courts may be guided by the following presumptions among others:

(1) That the Legislature does not intend a result that is absurd, impossible of execution or unreasonable;

(2) That the Legislature intends the entire statute to be effective and certain; . . .

(5) That the Legislature intends to favor the public interest as against any private interest."

Applying these presumptions, we believe our interpretation to be correct, because our result is not absurd, as the judges reaching the opposite conclusion admit their conclusion to be. Nor is our conclusion impossible of execution or unreasonable, but rather makes the act workable, effective, consistent, certain, reasonable, and just. This is not the case when the contrary conclusion is reached, and it is interesting to note that these sections of the Statutory Construction Act were necessarily ignored by the courts reaching the conclusion that club licenses are within the Liquor License Quota Act.

Again we quote from pages 231 and 232 of the opinion of Judge Wilson, cited above:

"Section 52 has been cited by several of our courts as supporting conclusions contrary to ours, in which we think they are in error. Subsection (3) and subsection (4), though in some measure material, may be disregarded. But under the facts before us, and conditions known to all, subsections (1), (2), and (5) have particular and direct significance. If club licenses are within the Quota Act, as contended for by the control board (see opinion of Attorney General Reno in Club Liquor License Quota, 36 D. & C. 225) then a license to the Colored Elks of Aliquippa is barred, possibly forever. Then such members as desire liquor, beverages, amusement, relaxation and companionship are forced to resort to hotels and restaurants, conducted and patronized by persons of both sexes and of different races and mould of mind, where they may not be welcome and where they will find none of the things

they desire. The use of tables and booths, the licensing of amusements, nearly all of which border on the sexually suggestive, and the employment of young women as waitresses and bar maids (see Acts of 1941, no. 155 and no. 156, as to employment of females in hotels, taverns, saloons, and eating houses) hardly improve the situation or make for peace and good order. That one beverage license, in excess of a quota including clubs, conducted at a place and in a manner offensive to the sensibilities of colored people should, for an indeterminable number of years, bar respectable colored citizens from getting a club license, is a result absurd and unreasonable and, under subsection (1), was not the intention of the legislature. That restaurant licenses suitable to the accommodation and entertainment of people of the colored race may be issued is no answer, as such are and will be barred by the quota, regardless of how the Quota Act is interpreted. To require hotels to meet the situation is an equally untenable position.

"As to subsection (2), we have made an interpretation of the Quota Act which renders the entire statute effective and certain.

"As to subsection (5), the licensing of hotels and restaurants, to the exclusion of reputable clubs, favors private interest as against public interest, and the presumption is that such was not the intention of the legislature. Alcoholic liquors have always been considered as nuisances and their control given to the police power, to be exercised by the legislature: Spankard's Liquor License Case, 138 Pa. Superior Ct. 251. To have alcoholic beverages dispensed to men, in a well-conducted club, rather than in resorts of the present number and character, conducted for private profit, is certainly in the public interest."

We conclude that the Liquor License Quota Act does not place any limitation upon the number of club li-

censes which the Liquor Control Board may issue, and that the legislature did not intend such a limitation.

Therefore, we are of the opinion that the only reason assigned by the Liquor Control Board to sustain its refusal to issue this club license is invalid, and the appeal should be sustained.

In a majority of the cases the court in sustaining the appeal directed the license to issue to the applicant. This procedure we believe is improper. We, therefore, will follow the same procedure we used in the Appeal of the Slavonic American Club case decided by this court on August 17, 1942, wherein we said:

"With respect to the order to be made in this case, we are of the opinion that Mays, J., in the Muhlenberg Sportsmen's Club Case, supra, made the proper order in the light of Section 403 of the Act of June 16, 1937, P. L. 1762, 47 P.S. 744-1, above quoted, for the reason that the said Act makes a distinction between the duty of the Board in granting licenses to hotels and restaurants and the duty of granting licenses to clubs, because the Act provides: 'In the case of a hotel or restaurant the Board *shall* issue a license, but the in the case of a club the Board *may* issue a license.' Therefore the Board has the discretion in granting or refusing club licenses, and the Court will not interfere with the exercise of this discretion unless it is shown to the satisfaction of the Court, on appeal, that the Board acted arbitrarily and abused the discretion vested in it.

"In this case, as in the Muhlenberg Sportsmen's Club Case, the Board concluded that as a matter of law they had no right under the Quota Act to issue a license. We are of a different opinion, for the reasons above stated, and therefore conclude that the appeal should be sustained.

"In the instant case a hearing before a Liquor Control Board Examiner has already been held, and it is agreed that all the rules and regulations of the Board

with respect to clubs have been complied with by the appellant, and therefore we do not deem it necessary to order and direct the Liquor Control Board to conduct a hearing, as was ordered in the Muhlenberg Sportsmen's Club Case, as we presume the file and investigation by the Board of this club is completed. We do, however, return this case to the Pennsylvania Liquor Control Board for further consideration and the exercise of its discretion, directing only by this decision that the Quota Act of 1939 does not restrict the Board from issuing a new license in Briarcreek Township, Columbia County, Pennsylvania."

Likewise, we return this case to the Pennsylvania Liquor Control Board for further consideration and for the exercise of the discretionary power and authority given said board by the Pennsylvania Liquor Control Act of 1937.

And now, to wit, May 29, 1943, the appeal of the Legion Home Association of Danville, Pa., is sustained.