## In re Inch's Appeal

*Stanley F. Coar* and *Edward A. Delaney, 2nd,* for appellants.

*Peter P. Jurchak,* for Pennsylvania Liquor Control Board.

HOBAN, J., June 3, 1946.—Appellants are restaurant proprietors in the City of Carbondale, Lackawanna County. As such they were licensed as retail dispensers of malt and brewed beverages under the Beverage License Law and held such a license from some period prior to the Liquor License Quota Act of June 24, 1939, P. L. 806, 47 PS §744-1001. On January 4, 1946, they applied to the Pennsylvania Liquor Control Board for a restaurant liquor license to replace and substitute for a retail dispenser's license.

On June 24, 1939, the City of Carbondale had 30 retail dispensers' licenses or restaurant liquor licenses

and there are the same number at the present time. The evidence does not disclose the separate number of retail dispensers' licenses and restaurant liquor licenses, but the total of 30 combined exceeds the quota law, which would authorize only 20 within the City of Carbondale.

The board took the position that the exchange or substitution of a restaurant liquor license for a retail dispenser's license would be the issue of a new license and that the board was without authority under the quota law to issue the license as requested. The sole question at issue in this appeal, therefore, is this: Does the exchange of a retailer dispenser's license for the sale of malt and brewed beverages for a restaurant liquor license constitute the issue of a new license so as to violate the quota provisions of the Act of June 24, 1939?

The pertinent provision in the quota law reads as follows:

"No licenses shall hereafter be granted by the Pennsylvania Liquor Control Board for the retail sale of malt or brewed beverages, or the retail sale of liquor and malt or brewed beverages in excess of one of such licenses, of any class, for each one thousand inhabitants or fraction thereof, in any municipality, exclusive of licenses granted to hotels, as defined in this act, and clubs; . . . Nothing contained in this section shall be construed as denying the right to the Pennsylvania Liquor Control Board to renew or to transfer existing retail licenses of any class, notwithstanding that the number of such licensed places in a municipality shall exceed the limitation hereinbefore prescribed; but where such number exceeds the limitation prescribed by this act, no new license, except for hotels as defined in this act, shall be granted so long as said limitation is exceeded."

Only four decisions attempting to construe the language above quoted have come to our attention, al-

though there are undoubtedly more unreported decisions since the question involved is the perplexing one of construing rather ambiguous language.

In Kester's Appeal, 140 Pa. Superior Ct. 293, the question came up and the appeal was dismissed. The Superior Court in that case took the position that appeal to the Superior Court was barred by the provisions of the Pennsylvania Liquor Control Act and the Beverage License Law prohibiting appeals from the decisions of the court of quarter sessions.

The Superior Court then went on as follows:

*"While not necessary to our decision*, we may state that we are of opinion that the construction placed upon the several acts above referred to by the board and the court below was correct.

"The respective licenses authorized by the several statutes are different and distinct, and transfers or exchanges from one kind of license to the other are not contemplated, except on the basis of new applications, which are subject to the limitations prescribed by the Act of 1939, P. L. 806, supra. See Spankard's Liquor License Case, 138 Pa. Superior Court, 251, 10 A. 2d 899." (Italics supplied.)

The language quoted is clearly obiter dicta, as pointed out by Hargest, P. J., Dauphin County, in his concurring opinion in the Appeal of Country Club of Harrisburg, 55 D. & C. 65, and hence not binding as precedent. The lower court cases, considering the language of Kester's Appeal as binding, followed it in disposing of requests for exchanges of types of licenses: Appeal of Matz, 35 Luz. 281; Appeal of American Club of Coplay, 21 Lehigh 109. But in the Country Club of Harrisburg case, supra, the Dauphin County Court considered that the exchange of a club malt or brewed liquor license for a club liquor license was not a new license within the meaning of the quota law. The theory of the majority of the court is that the prohibition in the quota law is not against the issuance

of a different *class* of license to be substituted for one already in effect, but against the granting of an *additional* license which would increase the number already in effect.

Since we are without binding precedent, we are forced to an independent examination of the statute for interpretation.

Some provisions of the Statutory Construction Act of May 28, 1937, P. L. 1019, are pertinent:

"Section 51. The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the Legislature. Every law shall be construed, if possible, to give effect to all its provisions.
. . .

"When the words of a law are not explicit, the intention of the Legislature may be ascertained by considering, among other matters . . . (4) the object to be attained; . . . (6) the consequences of a particular interpretation; . . .

"Section 52. In ascertaining the intention of the Legislature in the enactment of a law, the courts may be guided by the following presumptions among others:

"(1) That the Legislature does not intend a result that is absurd, impossible of execution or unreasonable;

"(2) That the Legislature intends the entire statute to be effective and certain;

"Section 33. Words and phrases shall be construed according to rules of grammar and according to their common and approved usage . . ."

It is clear that the purpose of the quota law is to limit the number of retail licenses issued. Hence, it is obvious that where the quota according to population has been exceeded, no new license in the sense of an additional license can be issued. But can we logically give meaning to the word "new" to include the exchange of one class of retail license for another, where

the total number of retail licenses is not thereby increased? We now examine the consequences of such an interpretation.

The types of retail liquor licenses authorized to be issued under the Pennsylvania Liquor Control Act include the following: Hotel licenses, restaurant licenses, club licenses, public service licenses, sacramental wine licenses. Here we use the word "retail" in its common meaning to include "the sale of goods in small quantities especially by those who have bought in larger quantities to resell at a profit; opposed to wholesale." The definition is taken from the New Standard Dictionary. Hotels are specifically excluded from consideration in the quota law, and the courts of this county have consistently held that clubs are likewise excluded.

Under the Beverage License Law we find that retail dispensers' licenses may be issued to hotels, eating places or clubs and to public service corporations for the purposes of licensing dining cars on railroads and dining facilities on ships. Distributors and importing distributors' licenses issued under the Beverage License Law are in one sense retail licenses, because through sale by distributors is the only lawful method in which individuals may purchase malt or brewed beverages in case lots or in excess of a total quantity of 72 ounces. Again we exclude hotels and clubs from consideration.

If we are to follow the language of the quota law exactly as written, a dealer in sacramental wine could not obtain a license to sell in any community where the quota law is already exceeded, because according to the common usage of the word "retail" such a dealer is clearly a retailer and such dealers are the only source of supply to priests, rabbis and clergymen, or to members of their congregation as certified by them, for wine to be used for sacramental or religious purposes. Is it reasonable to believe that the legislature desired to bring about such a restriction?

Licenses to railroads, pullman companies or to steamships or vessels under both the Liquor Control Act and the Beverage License Law are clearly licenses issued for the retail sale of liquor or malt or brewed beverages. Under this system of licensing, a railroad or pullman car company is entitled to sell liquor or malt or brewed beverages in dining, club or buffet cars, and ship owners to sell in the dining compartments of steamships or vessels, for consumption on the trains or vessels. In the case of railroad or pullman cars, the companies are issued master licenses and the license fees are varied according to the number of cars operated at given intervals. Ships are licensed separately. Now, if the quota law is to be followed exactly, it would seem that no railroad or pullman company could operate under license one car in which the retail sale of liquor or beverages is conducted more than it had in operation on June 24, 1939, or else they are faced with the impossible task of checking the number of other types of retail licenses in effect in every municipality whenever their cars cross municipal lines. Ship owners would be under the same difficulty, for every time a ship touched at a port, or crossed municipal lines in inland waters, it would be under the necessity of examining the current quota situation. It seems impossible that the legislature in adopting the quota law intended any such result.

Under the Beverage License Law of July 18, 1935, P. L. 1217, distributors and importing distributors are entitled to sell at retail, not for consumption on the premises, in quantities of not less than 288 fluid ounces, the usual case lot. The Beverage License Law provides that the board *shall* issue to any reputable person who applies therefor and complies with other conditions, a distributor's or importer's license and authorizes such distributor to sell or deliver malt or brewed beverages in quantities of not less than 288 fluid ounces anywhere within the Commonwealth of

Pennsylvania. Can it be conceived that the quota law intended to prohibit the further issue of distributors' licenses, or at least to deprive them of their right to sell at retail, in any municipality where the quota is already exceeded? So far as we are able to determine, not even the Pennsylvania Liquor Control Board places this administrative interpretation on the quota law.

We now must examine the meaning of the word "class" as used in the law. The dictionary definitions most applicable to our situation are as follows:

"A number of objects, facts or events having common accidental or essential properties; a set; kind; variety. . . . Logic—a group of objects to which all the similar attributes included in any concept or notion are common": New Standard Dictionary.

Therefore, the phrase "licenses of any class" as applied to the retail sale of liquor and malt or brewed beverages must include licenses which have the same common or essential properties, and must include all those which have the same attributes included in the concept of "retail" sale. As we have seen, the concept of retail sale applies to all dealers licensed under the various types or classes of licenses just discussed. But the idea that all of these various classes of licenses were to be stabilized at the existing number as of June 24, 1939, in all localities where all combined exceeded the quota requirements, does not seem to give a logical construction to our liquor control laws so as to give effect to all their provisions, and we venture to say that the Liquor Control Board gives no such administrative interpretation to the provisions of the law, particularly with reference to public service licenses, sacramental wine licenses and distributors' and importing distributors' licenses.

There is no logical reason why any other administrative or legal interpretation should be given to the situation with reference to retail dispensers' licenses for eating houses under the Beverage License Law, or

to restaurant liquor licenses under the Pennsylvania Liquor Control Act, with which situation we are immediately concerned. Let us examine the consequences further. If in the City of Carbondale we may assume that out of the 30 licenses of these two classes now issued there is but one restaurant liquor license and 29 retail dispensers' licenses, would it be held that in a city of 20,000 population it would be logical to assume that the legislature meant to restrict after June 24, 1939, restaurant liquor licenses to the single one in existence? We think such an interpretation would be absurd and unreasonable, but such would be the strict interpretation of the language of the quota law if we are to agree with the position of the Liquor Control Board.

Following the reasoning set forth above, we are of the opinion that in order to give effect to all the provisions of the liquor control laws, including the Act of 1939, considering the object to be attained, the consequences of the interpretation desired by the Liquor Control Board, and the absurd and unreasonable results which would follow that interpretation, the prohibition against the issue of new licenses in the Liquor Control Act must be considered limited to mean an additional license and over the authorized quota or the number of combined licenses issued as of June 24, 1939, and still in effect. It follows that the exchange of a license for the retail sale of malt or brewed beverages, for a license for the retail sale of liquor does not constitute the issue of a new license within the meaning of the quota law, and hence that the appeal in this case must be sustained.

Now, June 3, 1946, the appeal is sustained and the Pennsylvania Liquor Control Board is directed to issue to Henry D. Inch and Virginia Inch a restaurant liquor license for the premises at 1 Carden Avenue, Carbondale, upon surrender of the retail dispensers' license now in their possession.