## Scherer Appeal

*Albert J. Crawford, Jr.*, for petitioners.

*William N. J. McGinniss*, Special Assistant Attorney General, for Pennsylvania Liquor Control Board.

TOAL, J., March 22, 1962.—This is an appeal from the refusal of the Pennsylvania Liquor Control Board to grant a new restaurant liquor license to Gaven Scherer and Kathryn Scherer, his wife, for premises situated on the Baltimore Pike, Wawa, in Middletown Township, Delaware County, Pennsylvania. The restaurant has been conducted at this site by the parties for more than 21 years under the assumed or fictitious name of "Chicken-In-A-Basket". The testimony was taken before Judge Toal, on December 13, 1961, and was argued before the court en banc on February 26, 1962.

The reasons given by the board for the refusal of the license were:

"(1) As provided by the law, Middletown Township, Delaware County has a quota of seven licenses for the retail sale of liquor and malt beverages and there are presently seven such licenses in effect which fill that quota.

"(2) Inasmuch as the legal quota for the township is filled, the board is prohibited by law from issuing an additional restaurant liquor license therein.

"The board is of the opinion that, under the above established facts, this application for a new restaurant liquor license in excess of the quota of licenses pre-

scribed by law for Middletown Township, Delaware County, must be refused, there being no authority under the law for the issuance of a new restaurant liquor license in excess of the quota. Therefore the following order is made:

### Order

"And now, August 16, 1961, for the above reasons it is ordered and decreed that the restaurant liquor license applied for by Gaven and Kathryn Scherer for premises located on Baltimore Pike in the Township of Middletown and County of Delaware be and it is hereby refused.

Pennsylvania Liquor Control Board<br>
By Patrick E. Kersin (signed)<br>
(Member)

Attest:                     A. D. Cohn  (signed)
(Member)

Frank J. Shea  (signed)
Secretary

D. B. Swaney  (signed)<br>
(Member)"

The evidence established that applicants are responsible persons of good repute who are qualified to hold a license and that the premises meet the physical requirements established by the regulations of the board, under authority of the Liquor Code.

It appears from the record that the application was filed with the board on February 1, 1960; that the premises owned and operated by applicants were examined by the board's officers and approved as proper and satisfactory for a liquor license; that there was no deed restriction or other physical impediment to the issuance of a license; that applicants were of good character and proper persons to whom a liquor license could be issued; that as of February 1, 1960, the quota of liquor licenses for Middletown Township was seven

licenses, that the 1960 census, certified as of April 1, 1960, showed a population in Middletown Township of 11,256, an increase of 4,000 above the 1950 census; that this would maintan the quota allowance at seven if the basis were one license per 1,500 population, but would increase the allowable licenses to 12 if the old basis of one license per 1,000 population, or fraction thereof, were applicable.

Subsection (a) of section 461, Act of April 12, 1951, P. L. 90, known as the Liquor Code, as amended August 11, 1959, P. L. 670, provides that no license shall hereafter be granted for the retail sale of malt or brewed beverages or the retail sale of liquor and malt or brewed beverages in excess of one of such licenses of any class for each 1,000 inhabitants or fraction thereof in any municipality. It exempted airport restaurants and hotels and clubs from the quota provisions.

On December 17, 1959, the legislature amended subsection (a) of section 461, Act of April 12, 1951, P. L. 90, known as the Liquor Code, and provided that no license hereafter be granted for the sale of liquor at retail in excess of one of such licenses for each 1,500 inhabitants or fraction thereof. This amended act took effect February 2, 1960.

Section 2 of the amended act provided as follows:

"Section 2. *The provisions of this amendment shall not apply to applications for licenses for the retail sale of liquor, or the retail sale of malt or brewed beverages, filed and pending prior to the effective date of this amendment.*

"Section 3. *This act shall take effect February 2, 1960.*" (Italics supplied.) (1959, P. L. 1932).

The board, by its ruling, decided that in order to come within the saving clause of the final 1959 amendment to the quota provisions of the Liquor Code above-quoted, it was necessary that there be not only a license

vacancy under the old quota, but that there must be a vacancy under the old quota applying the census in effect at the time of the filing of the application as distinguished from the census at the time of the hearing for the granting of the license. It is also clear that the board, in effect, decided that if it were not for this quota problem the petitioners would have been entitled to a restaurant liquor license.

Petitioners state the questions involved as follows in their brief and we adopt the wording of these questions as our own:

1. Does the saving clause of the Act of 1959, P. L. 1932, continue to apply to a liquor license application filed prior to February 2, 1960, until said application is disposed of, so that the quota of one license per 1,000 population, or fraction thereof, is the quota to be considered in connection with the application in the present case?

2. In applying the quota provisions of the Liquor Code, which census applies, (1) the last census at the time of the filing of the application, or (2) the latest census at the time of the hearing (or the granting of the license)?

With respect to question (1), we repeat the wording of the saving clause of the amendment which increased the quota to one license per 1,500 population:

"The provisions of this amendment shall not apply to applications for licenses for the retal sale of liquor, or the retail sale of malt or brewed beverages, filed and pending prior to the effective date of this amendment."

The board, however, has taken the position that said section must be read as if it were worded as follows:

"The provisions of this amendment shall not apply to applications for licenses for the retail sale of liquor, or the retail sale of malt or brewed beverages, filed and pending prior to the effective date of this amend-

ment *if, and only if, the quota applicable to liquor
licenses in the political sub-division from which said
application is filed is not filled at the time of the filing
of said application.*" (Italics supplied.)

If the board's apparent interpretation or construc-
tion of the amendment as thus stated is sound, then, of
course, appellants are not entitled to a restaurant
liquor license.

The board claims that the words "filed and pending"
in the amendment were intended to include only appli-
cations *filed and pending where there is a vacancy
under the quota law at the time of filing.* But no
matter how the board's position is stated, the answer
to it adds up to the same thing; namely, that although
the legislature unquestionably could have worded the
saving clause as the board contends it intended, never-
theless, the legislature did not do so, and hence all
parties concerned, including the board, must accept
the amendment as worded.

The key words in the saving clause are the words
"filed and pending".

There is no question at all but that the application in
this case was filed not later than February 1, 1960.
Despite the numerous communications, considerations,
meeting with the board chairman, refusal and reci-
sion, all of which have been related in detail in the
facts of the case, the board itself suggested that the
application be held pending a determination of the
population of Middletown Township under the 1960
census. At the board's own suggestion, therefore, and
in accordance with the stipulation of the parties them-
selves, the Scherer application must be considered to
have been filed prior to February 2, 1960, the effective
date of the 1959 amendment.

With respect to the question as to whether or not the
matter was pending, it should not be lost sight of that
under section 464 of the Liquor Code an applicant has

an absolute right to a hearing upon request, which hearing shall be before the board, a member thereof, or an examiner designated by the board. Indeed, the Superior Court in Spankard's Liquor License Case, 138 Pa. Superior Ct. 251 at 258, citing Cochran's License, 47 Pa. Superior Ct. 376, stated that:

" 'The applicant has no absolute right to a license, although complying with the statutory requirements, but he has a right to a hearing and decision on his application.' "

Until an applicant has his hearing, or in the event of an appeal therefrom, until final disposition of the appeal, the case must be considered "pending". In support of this interpretation see Spankard's Case, supra, where, at page 260, the Superior Court, referring to the provisions in the Liquor Control Act of June 16, 1937, P. L. 1762, which deprives the board of power to renew liquor licenses in municipalities which have voted against such sale, said:

"Nothing is said in that act, either, about *pending applications*, but no one would seriously contend that it did not apply and forbid the grant of licenses to such applicants." (Italics supplied.)

In the same opinion, referring to the Quota Act of 1939, at page 257, the court says:

"Appellant contends that the Act should not apply to applications for license which were pending and undisposed of on the effective date of the Act, which was 'immediately upon final enactment'; but the statute makes no such exception. It expressly forbids the granting of any such new license, after June 24, 1939, in excess of the ratio fixed by the Act, and includes no saving clause affecting *pending* applications." (Italics supplied.)

Under the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §511 et seq., it is the duty of the court to interpret the meaning of a statute from

the words used by the legislature and the letter of the statute is not to be disregarded under the pretext of pursuing its spirit: Otto Milk Company v. Washington City, 363 Pa. 243.

No question of legislative intent arises unless there be some ambiguity in the statute, and the courts may not speculate on what the intention was unless some ambiguity exists: Liberty Firemen's Social Club Liquor License Case, 168 Pa. Superior Ct. 500, 502.

The language of the legislature is precise and clear in its enactment increasing the quota for one license to every 1,500 population from the previous enactment of one license to every 1,000 inhabitants. The legislature in simple, precise, clear language said, "The provisions of this amendment (increasing the population requirement) shall not apply to applications . . . filed and pending prior to the effective date of this amendment." The effective date of the amendment was February 2, 1960.

Admittedly by the facts and by stipulation of counsel upon the record, appellants' application was filed on February 1, 1960, and pending from that date until the time of the board's hearing date, fixed by the board as of July 12, 1961.

Question (2) is commented on as follows:

The Liquor Code of April 12, 1951, P. L. 90, art. I, sec. 102, 47 PS §1-102, as originally enacted contained the following definition:

" 'Population' shall mean the population as determined by the last preceding decennial census of the United States."

The Legislative Reference Bureau, which drafted the Pennsylvania Liquor Code (c. f. foreword by Horace A. Segalbaum, Esq., Deputy Attorney General and counsel to the Pennsylvania Liquor Control Board), 47 PS at page 246, issued the following comment on the above definition:

"The definition of 'population' is new. The said definition has been added in order to have uniformity, as some lower courts have held that the population of a particular municipality is not required to be determined in accordance with the last United States decennial census. However, the majority of the lower courts and the appellate courts hold that the United States census is the best evidence of population. This amendment is desirable." (c.f. Footnote to 47 PS §1-102)

As last amended, Act of July 10, 1957, P. L. 638, sec. 1, 47 PS §1-102, the said definition reads:

" 'Population' shall mean the number of inhabitants as determined by the last preceding decennial census of the United States, or by any other census subsequently taken by the census bureau of the United States and so certified by it: Provided, however, That such other census shall not be a basis for the fixing of license fees as provided in article IV sections 405 and 439."

The word "last" in the phrase "last preceding decennial census" in the above definition means last in relation to the time of the hearing or issuance of the license, and not last in relation to the time of filing the application. Indeed, we understand that, except in this case and the other three similar cases, the board, with very few exceptions, has taken the position that the conditions to be met for the granting of a liquor license must be met at the time of the hearing or at the time for issuance of the license.

In Spankard's Liquor License Case, 138 Pa. Superior Ct. 251, one of the questions was whether the original Quota Act applied (in an appeal to quarter sessions court from the board's refusal to grant a liquor license on other grounds), when the act became effective on June 24, 1939, after the appeal had been filed on June 15, 1939. The Superior Court held, on page 260, that the Quota Act did apply on the ground

that after June 24, 1939, the board was without statutory authority to issue new licenses in excess of the quota which became effective on that date. Hence, in those municipalities which suffered a decrease in population as a result of the 1960 census, clearly the board would, under the reasoning of the Spankard Case, be without statutory authority to issue a new license after the certification of said 1960 census, even if the application therefor were filed prior to said certification, and even if a new license could have been issued under the 1950 or later special census. In the absence of statutory warrant for such a position, the board cannot, when one census is in force at the time of the application, and a later census is in effect at the time of the hearing, apply that census which gives the least number of licenses. It is, therefore, clear that the board must apply the 1960 census for Middletown Township in this case; said census having been the last decennial census at the time of the hearing, within the meaning of the Liquor Code.

In another case, Appeal of Pecoraro, 19 Beaver 205 (1958) (although the quota situation there was the same both at the time of the filing of the application for the license and at the time of the hearing de novo), where the board had contended that the 1957 amendment to section 101 of the Liquor Code (changing the definition of population to require referring to any special interim census that might be conducted by the Census Bureau) did not apply to an interim census that was certified prior to the effective date of the amendment, Judge McCreary held as follows on page 209:

"On the date the appeal in this case was heard de novo, the population of Hopewell Township, as certified by the Bureau of the Census of the United States on August 1, 1957 was 12,064. Therefore, under the Quota Law as amended by the Act of July 10, 1957,

being Act No. 346, The Township is entitled to thirteen licenses. There are only seven in operation as of the time of the hearing of the appeal. Therefore, the Board is mistaken, as a matter of law, when it says that the quota for the Township is filled and that it cannot grant any license to the appellants. We must, therefore, reverse the Board and direct that a license issue to the appellants."

The hearing in this case was held July 12, 1961, which date was after April 1, 1960, the date of the certification of the 1960 census. Therefore, the board was required to consider the new census showing an increased population when it decided the question of the issuance or nonissuance of the license to the applicants.

The matter now before us is de novo and we find the pure question of law in favor of the petitioners who are appellants herein.

From the evidence taken before the board, supplemented by the evidence taken before the court, we make the following:

### Findings of Fact

1. The place proposed to be licensed qualifies in every respect as a proper place for such a license.

2. Applicants each qualify in every respect as persons to whom it is proper to issue such a license.

3. The application for said license was made timely in accordance with law and is entitled to the protection of the saving clause discussed herein.

4. The census population figure as established by the 1960 centennial census must be considered in fixing the quota as applied to the present application for such a license.

### Order

And now, to wit, March 22, 1962, it is ordered and decreed that the appeal in the above-entitled case be

and it is hereby sustained, and the action of the Pennsylvania Liquor Control Board in refusing the issuance of the license be and it is hereby reversed. The said board is herewith directed to issue said liquor license to applicants forthwith in accordance with law and the regulations of said board duly promulgated.