## Commonwealth ex rel. Davidson, Appellant, *v.* Maroney.

Argued November 16, 1954. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ.

*Harold Gondelman,* with him *M. Barney Cohen,* for appellant.

*Frank P. Lawley, Jr.,* Deputy Attorney General, with him *Frank F. Truscott,* Attorney General, for appellees.

OPINION BY WRIGHT, J., January 14, 1955:

On March 18, 1949, John Davidson pleaded guilty to indictments in the Court of Quarter Sessions of Westmoreland County at Nos. 127 and 128 May Sessions, 1949, charging burglary of motor vehicle, larceny and receiving stolen goods, and was sentenced to the Western State Penitentiary for not less than two years nor more than four years. On March 18, 1951, at the expiration of his minimum term, Davidson was released on parole. Two days later, he absconded from supervision and left the Commonwealth. On April 20, 1951, the Board of Parole took formal action declaring Davidson delinquent. On July 25, 1953, notice was received that Davidson had been arrested in the State of New York on a charge of burglary. He subsequently pleaded guilty to petit larceny. On December 1, 1953, the Board ordered Davidson's return to the Western State Penitentiary for technical parole violation. Formal action for recommitment was taken by the Board on February 4, 1954, at which time credit was given for the period between April 20, 1951, and August 24, 1951,[1] and also for the period between September 26, 1953, the date when Davidson was available for return, and December 7, 1953, the date of his actual return. According to the Board's calculation, Davidson thus owed one year, six months, and twenty-four days back parole time, and his maximum sentence will expire

_____

[1] The effective date of the Act of August 24, 1951, P. L. 1401, see footnote 2.

April 20, 1955. Davidson has appealed from an order of the Court below dismissing his petition for a writ of habeas corpus.

Appellant's statement of the questions involved in this appeal is as follows: "1. Does the Act of August 24, 1951, P. L. 1401, 61 PS Section 331.21(a) apply to a technical violator of his parole when the parolee was placed on parole prior to the enactment of said statute? 2. Does not the application of the Act of August 24, 1951 to the appellant constitute retroactive legislation? 3. If the Act of August 24, 1951, as applied to appellant is retroactive, does the act itself clearly and manifestly indicate the legislative intent that it should be applied retroactively?" These questions were combined for the purpose of argument, and the one issue before us is whether the Act of August 24, 1951, P. L. 1401, section 5, 61 PS 331.21a,[2] was properly applied to this appellant.

In the absence of the statute under consideration, the Board would have lacked authority to order appellant's recommitment: *Commonwealth ex rel. Tate*

---

[2] This statute adds to the Act of August 6, 1941, P. L. 861, a new section reading in pertinent part as follows: "Section 21.1 . . . (b) Technical Violators. Any parolee under the jurisdiction of the Pennsylvania Board of Parole released from any penal institution in the Commonwealth who, during the period of parole, violates the terms and conditions of his parole . . . may be recommitted after hearing before the board . . . as a parole violator. If he is so recommitted, he shall be given credit for the time served on parole in good standing but with no credit for delinquent time, and may be reentered to serve the remainder of his original sentence or sentences. Said remainder shall be computed by the board from the time his delinquent conduct occurred for the unexpired period of the maximum sentence imposed by the court without credit for the period the parolee was delinquent on parole, and he shall be required to serve such remainder so computed from the date he is taken into custody on the warrant of the board".

*v. Burke,* 364 Pa. 179, 71 A. 2d 241. It was there held that the remainder of the period which a technical parole violator must serve was to be computed from the date of his arrest for such breach of parole. The effect of this decision was that the longer a technical parole violator could remain unapprehended the shorter was his period of confinement upon recommitment. If he could successfully avoid arrest until the expiration of his maximum term, he could not be recommitted at all. The Act of 1951 was designed to remedy this undesirable situation. Appellant "does not contend that the statute is ex post facto as applied to him". His position is that the law in force at the time of his parole was as set forth in the *Tate* case, and that it was error "to apply said Act retroactively" since the Legislature manifested no such intent.[3]

The Legislature has exclusive power to determine the penological system of the Commonwealth, and it may therefore establish a system of parole: *Commonwealth ex rel. Banks v. Cain,* 345 Pa. 581, 28 A. 2d 897. This power necessarily includes the authority to make such changes in terms and conditions as the Legislature may from time to time see fit. The granting of a parole is a matter of grace: *Commonwealth ex rel. Lynch v. Ashe,* 320 Pa. 341, 182 A. 229. It is true that the rule in effect on the date appellant was released on parole, and on the date he was declared delinquent, was the rule set forth in the *Tate* case. However, the Act of 1951 changed that rule to prevent the receipt of credit by a technical violator for delinquent time spent outside prison prior to arrest. As of August 24,

---

[3] Section 56 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS 556, provides: "No law shall be construed to be retroactive unless clearly and manifestly so intended by the Legislature".

1951, appellant lost the advantage which, as a technical violator, he enjoyed under the rule of the *Tate* case. There is no constitutional guarantee against change in the law relating to parole, and appellant was therefore not deprived of any vested right: *United States v. Garfinkel*, 166 F. 2d 887. He cannot complain that the Act of 1951 should not apply to him from and after its effective date.

Section 32 of the Act originally setting up the Board of Parole specifically provides:[4] "The provisions of this act are hereby extended to all persons who, at the effective date hereof, may be on parole or liable to be placed on parole under existing laws with the same force and effect as if this act had been in operation at the time such persons were placed on parole, or became liable to be placed thereon, as the case may be". Appellant contends that the failure to use similar language in the Act of 1951 indicates a different legislative intention. To the contrary, the Act of 1951 added a new section which must be read in connection with section 32 of the original Act.[5] Such a construction does not give retroactive effect to the statute. In the words of President Judge KELLER, "it only does what the Act expressly provides, it puts the Act into *immediate* effect upon final enactment": *Spankard's Liquor License Case*, 138 Pa. Superior Ct. 251, 10 A. 2d 899. On August 24, 1951, appellant was still on parole, and his absence from the Commonwealth, which was the basis for the declaration of his delinquency, still continued. Our conclusion is that the Legislature intended the Act of 1951 to apply as of its effective date to persons in appellant's situation.

The order of the court below is affirmed.

---

[4] Act of August 6, 1941, P. L. 861, section 32, 61 PS 331.32.

[5] See section 73 of the Statutory Construction Act (46 PS 573).