**Joseph MYERS, Petitioner,**

v.

**Thomas RIDGE, Governor; Pennsylvania Board of Probation and Parole; Martin F. Horn, Commissioner of Corrections, Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 21, 1997.

Decided May 15, 1998.

Joseph Myers, petitioner, for himself.

Mary C. Bodo, Harrisburg, for respondent, Probation and Parole.

Sarah Vandenbraak, Camp Hill, for respondent, Dept. of Corrections.

Before PELLEGRINI and KELLEY, JJ., and NARICK, Senior Judge.

KELLEY, Judge.

Before this court are the preliminary objections of Governor Thomas Ridge, the Pennsylvania Board of Probation and Parole (Board) and Martin F. Horn, Commissioner of the Pennsylvania Department of Corrections (collectively, Respondents) to Joseph Myers' *pro se* petition for review of the decision of the Board denying his application for parole from the State Correctional Institution at Huntingdon.

In 1982, Myers and his cousin (co-defendant) were arrested and charged with murder and other related offenses. Myers was convicted of third-degree murder and was sentenced to a term of 10 to 20 years on July 23, 1986. In 1994 upon the expiration of his minimum sentence, and again in 1995, Myers applied for parole. Both applications were reviewed and denied by the Board.

In 1996, Myers again submitted an application for parole. By decision dated October 16, 1996, the Board denied Myers' application citing the following reasons for its denial: substance abuse, habitual offender, assaultive instant offense, victim death, weapon involved in the commission of offense, need for continued counseling and seriousness of the offense. The decision advised Myers that he must continue to participate in a prescriptive program plan, maintain a clear conduct record and maintain an institutional recommendation for parole. The decision further stated that Myers would be "review[ed] in August, 1997, or earlier, if recommended by the appropriate institutional staff because of demonstrable benefit from participation in community corrections center."

On June 16, 1997, Myers filed a petition for review in the nature of a mandamus in this court's original jurisdiction requesting relief in the form of a declaratory judgment, injunctive relief and equitable relief. Myers avers that (1) Commissioner Horn deprived him of due process by precluding him from participating in a community corrections center; (2) the Board deprived him of due process by denying him a fair parole review; (3) Respondents retroactively applied provisions of what is commonly known as the Parole Act [1] and internal Board policies in violation of the prohibition against ex post facto laws; and (4) Respondents denied him equal protection under the law.

Respondents filed preliminary objections on July 23, 1997. Respondents assert that Myers has failed to: (1) allege any loss of liberty as a result of Commissioner Horn's failure to refer him to a community corrections center; (2) state a cause of action against the Board for denial of his application for parole; (3) establish a violation of the prohibition against ex post facto laws; and (4) state a cause of action against the Respondents for a violation of his equal protection rights under the Fourteenth Amendment.

■ In our original jurisdiction, an action in mandamus must define the issues, and every act or performance essential to that act

must be set forth in the complaint. *See* Pa.R.C.P. No. 1019. In ruling upon preliminary objections in the nature of a demurrer, we must accept as true all well-pleaded allegations of material fact and all inferences reasonably deducible therefrom. *Stone and Edwards Insurance Agency, Inc. v. Department of Insurance,* 151 Pa.Cmwlth. 266, 616 A.2d 1060 (1992). However, we need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations or expressions of opinion. *Giffin v. Chronister,* 151 Pa.Cmwlth. 286, 616 A.2d 1070 (1992). The test is whether it is clear from all of the facts pleaded that the pleader will be unable to prove facts legally sufficient to establish his or her right to relief. *Firing v. Kephart,* 466 Pa. 560, 563, 353 A.2d 833, 835 (1976).

■ Preliminarily, we note that parole is not a right in Pennsylvania, but a matter of grace. *Commonwealth v. Brittingham,* 442 Pa. 241, 275 A.2d 83 (1971); *Reider v. Pennsylvania Board of Probation and Parole,* 100 Pa.Cmwlth. 333, 514 A.2d 967 (1986). The Board has been granted broad discretion in parole matters and what the Board decides, and why, being wholly a matter of the Board's discretion, is simply not subject to judicial review. *Reider v. Pennsylvania Board of Probation and Parole,* 100 Pa.Cmwlth. 333, 514 A.2d 967, 971–72 (1986). It is for the Board alone to determine whether or not a prisoner is sufficiently rehabilitated to serve the remainder of his sentence outside the confines of prison. *Id.* As a result, decisions to grant or deny parole are generally not appealable except to the extent that a constitutional or statutory violation has occurred. *Lawson v. Commonwealth, Department of Corrections,* 114 Pa.Cmwlth. 573, 539 A.2d 69 (1988).

## 1. DUE PROCESS

The Board's first preliminary objection to Myers' petition for review is that Myers has failed to allege any loss of liberty as a result of Respondent Horn's refusal to refer Myers to a community corrections center. We agree.

1. Act of August 6, 1941, P.L. 861, *as amended,* 61 P.S. §§ 331.1 – 331.34a.

The Fourteenth Amendment of the United States Constitution provides that "no state shall make or enforce any law which shall ... deprive any person of life, liberty, or property, without due process of law." In order to determine that a constitutional violation has occurred, this court must first determine whether a protected liberty interest exists. *Wilder v. Department of Corrections,* 673 A.2d 30 (Pa.Cmwlth.1996) *petition for allowance of appeal denied,* 545 Pa. 673, 681 A.2d 1344 (1996).

We have consistently held that a prisoner has no constitutionally protected liberty interest in the expectation of being released from confinement prior to the expiration of the maximum term of the imposed sentence. *Blair v. Pennsylvania Board of Probation and Parole,* 78 Pa.Cmwlth. 41, 467 A.2d 71 (1983), *cert. denied,* 466 U.S. 977, 104 S.Ct. 2358, 80 L.Ed.2d 830 (1984). We have similarly held that participation in a prerelease program does not constitute a protected liberty interest. *Wilder; Lawson.* Rather, participation in a prerelease program, such as a community corrections center, is a special privilege granted for satisfactory behavior while incarcerated. *Auberzinski v. Board of Probation and Parole,* 690 A.2d 776 (Pa. Cmwlth.1997); *Lawson.*

Since participation in a community corrections center is not a protected liberty interest, Myers will be unable to make a rational argument in law or fact that Respondent Horn's refusal to refer Myers to a prerelease program violated his constitutional right to due process. Accordingly, Respondents' preliminary objection to Myers' due process claim is sustained.

## 2. EX POST FACTO

Respondents next contend that Myers has failed to state a cause of action against Respondents for violation of the constitutional prohibition against ex post facto laws. We agree.

The General Assembly has exclusive power to determine the penological system of the Commonwealth, including the power to establish a system of parole. *Com-*

*monwealth ex rel. Banks v. Cain,* 345 Pa. 581, 28 A.2d 897 (1942); *Commonwealth v. Maroney,* 177 Pa. Superior Ct. 82, 110 A.2d 822 (1955). This power necessarily includes the authority to make such changes in terms and conditions of parole as the General Assembly may see fit. *Maroney.* In other words, there is . no constitutional guarantee against change in the law relating to parole. *Id.* Nevertheless, such a change in the law may not be in violation of the prohibition against ex post facto laws. U.S. Const. art. I, § 10; Pa. Const. art. I, § 17.

For a law to be ex post facto it must impose a punishment for an act which was not punishable at the time it was committed or impose additional punishment to that then prescribed. *Weaver v. Graham,* 450 U.S. 24, 28, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981). Two critical elements are necessary to establish an ex post facto claim. *Id.* First, the law must be retrospective, that is, it must apply to events occurring before its enactment. *Id.* Second, it must disadvantage the offender affected by it. An exception to this rule is that if the statutory change does not prejudicially affect the substantive rights of the parties and is merely procedural or remedial in nature, it can apply retroactively. *See Dobbert v. Florida,* 432 U.S. 282, 293, 97 S.Ct. 2290, 53 L.Ed.2d 344, (1977), *cert. denied,* 448 U.S. 916, 101 S.Ct. 37 (1980), ("Even though it may work to the disadvantage of a defendant, a procedural change is not ex post facto."); *see also Weaver.*

### a. Fair Parole Review

Myers contends that the Board violated the ex post facto clause as well as his due process rights to a fair parole review by retroactively applying section 34.1 of the Parole Act.[2] We disagree.

Section 34.1 was added as part of the 1995 amendments to the Parole Act and became effective on July 31, 1995. Section 34.1(a)(3) provides that the Board is not permitted to "act upon" an application of an inmate who is serving a term of imprisonment for a crime

2. *Added by* the Act of June 1, 1995 P.L. 1020

(Special Sess.), *as amended,* 61 P.S. § 331.34a.

of violence[3] unless the inmate has served at least one year in a prerelease center. In other words, for a prisoner who committed a violent crime, such as murder in the third degree, participation in a prerelease program is required before the Board may even consider an application for parole.

Myers relies upon the case of *Mickens–Thomas v. Pennsylvania Board of Probation and Parole*, 699 A.2d 792 (Pa.Cmwlth.1997), in support of his position that the Board was not permitted to retroactively condition his release upon participation in a prerelease center. In *Mickens–Thomas*, upon the prisoner's parole eligibility following the commutation of his sentence, the Board refused to consider his application for parole due to his failure to serve at least one year in a prerelease center as required by section 34.1(a)(3). The prisoner filed an action in mandamus contending, *inter alia*, that the retroactive application of section 34.1(a)(3) violated the constitutional prohibition of ex post facto laws and his due process rights. Although the Board filed preliminary objections arguing that section 34.1(a)(3) was applicable, at oral arguments before this court the Board withdrew its demurrer and conceded that section 34.1(a)(3), enacted after the commutation of the prisoner's' sentence, should not have been retroactively applied to the application for parole.

Unlike the prisoner's application in *Mickens–Thomas*, however, Myers' application for parole was considered by the Board following the expiration of his minimum sentence. Contrary to Myers' assertions, the Board did not condition Myers' opportunity for future review of his parole application on serving at least one year in a prerelease program. Rather, the Board stated that Myers would be reviewed in August 1997 *"or earlier"* if recommended by the appropriate institutional staff because of demonstrable benefit from participation in community corrections center. Board decision of October 16, 1996.

■■■ Although Myers' application for parole was ultimately denied, it was not denied on the grounds that he did not participate in a prerelease program. Rather, the Board denied Myer's application on the basis of the following factors: "substance abuse, habitual offender, assaultive instant offense, victim death, weapon involved in the commission of offense, need for continued counseling and seriousness of the offense." *Id.*

We, therefore, conclude that Myers' contentions that the Board denied him a fair parole hearing by retroactively applying section 34.1(a)(3) are simply without merit.

### b. Three Vote Requirement

Myers contends that the internal parole policy requiring three panel votes before parole may be granted is in violation of the constitutional prohibition against ex post facto laws. We disagree.

At the time of Myers' conviction, Pennsylvania had a three-member Board.[4] No person could be paroled except by a majority of the entire Board.[5] In other words, no person could be paroled with less than two votes – a two-thirds majority.

In 1986, the General Assembly amended both section 2 and section 4 of the Parole Act. The 1986 amendments expanded the Board to a nine-member panel and provided that no person could be paroled except by a majority of the entire membership of the Board, except as provided in subsections (b), (c) and (d) of section 4 of the Parole Act. Subsection (b) provides that the Board may

---

**3.** Section 34.1(b) of the Parole Act, 61 P.S. 331.34a(b), provides that the term "crime of violence" means:

(1) Murder of the third degree, voluntary manslaughter, rape, sexual assault, involuntary deviate sexual intercourse, robbery as defined in 18 Pa.C.S. § 3701(a)(1)(i), (ii) or (iii) (relating to robbery), robbery of a motor vehicle, arson as defined in 18 Pa.C.S. § 3301(a) (relating to arson and related offenses), aggravated assault as defined in 18 Pa.C.S. § 2702(a)(1) (relating to aggravated assault) or kidnapping.

(2) An attempt to commit voluntary manslaughter, rape, involuntary deviate sexual intercourse, robbery as defined in 18 Pa.C.S. § 3701(a)(1)(i), (ii) or (iii), aggravated assault as defined in 18 Pa.C.S. § 2702(a)(1) or kidnapping.

**4.** Section 2 of the Parole Act, 61 P.S. § 331.2.

**5.** Section 4 of the Parole Act, 61 P.S. § 331.4.

make decisions on parole in panels of two persons provided that the panel consists of one Board member and one hearing examiner or of two board members. 61 P.S. § 331.4(b). If there is disagreement on a decision to parole between the members of the two-person panel, subsection (c) provides that the matter will be decided by a third person – a Board member appointed by the chairman or the chairman's designee – who shall concur with one of the original panel members. 61 P.S. § 331.4(c). In essence, the original mandate that no prisoner could be paroled with anything less than a two-thirds majority remained the same.

In 1995, following the parole of Robert "Mudman" Simon, the Board adopted a specific parole policy for parole candidates who are "violent offenders." *Investigation into the Parole of Robert Simon,* Senate of Pennsylvania Judiciary Committee, February 1996. The policy requires the affirmative vote of three persons, including at least one Board member, before parole can be granted. *Id.* at p. 33.

Myers contends that the three-vote requirement is in violation of the ex post facto clause and relies upon the decision in *United States ex rel. Steigler v. Board of Parole,* 501 F.Supp. 1077 (D.Del.1980) in support of his position. At the time Steigler was convicted and sentenced, the Delaware statute in effect provided that parole was to be determined by a simple majority of a five-member board. Prior to Steigler's parole eligibility, the Delaware statute was amended to require an affirmative vote of four of the five members before parole could be granted to inmates convicted of certain serious crimes. As a result of the amendment, Steigler's application for parole was denied because only three members of the board affirmatively voted to grant him parole.

The *Steigler* court found that the clear purpose of the statutory change was to make parole substantially more difficult for particular classes of defendants by requiring a greater quantity of proof of fitness for parole than that required under the prior law. Relying upon *Thompson v. Utah,* 170 U.S. 343, 18 S.Ct. 620, 42 L.Ed. 1061 (1898),[6] the court concluded that the law violated the ex post facto clause.

While *Steigler* may be directly on point with the case before us, the persuasive value of *Steigler* has been greatly undermined due to its reliance on *Thompson* as the Supreme Court overruled *Thompson* in *Collins v. Youngblood,* 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990).[7] Since *Steigler,* a number of other courts have considered the issue of whether a change in the number of votes needed for parole sufficiently disadvantages defendants and have indicated that the same does not violate the ex post facto clause. *See Alston v. Robinson,* 791 F.Supp. 569 (D.Md., 1992); *United States ex rel. Chaka v. Lane,* 685 F.Supp. 1069 (N.D.Ill., 1988); *Gilmore v. Kansas Parole Board,* 243 Kan. 173, 756 P.2d 410 (1988), *cert. denied,* 488 U.S. 930, 109 S.Ct. 318, 102 L.Ed.2d 336 (1988); *State of Arizona ex rel. Gonzalez v. Superior Court,* 184 Ariz. 103, 907 P.2d 72 (1995).

In *Gilmore,* the Kansas Supreme Court distinguished the case before it from *Steigler* in ruling that a change in the number of votes needed for parole does not violate the ex post facto clause. At the time of Gilmore's conviction, Kansas had a five-member parole board. An affirmative vote of a majority of the board, three members, was required before parole could be granted. But the statute never established the exact number of board members who had to vote in favor of parole before parole could be granted. The board, by internal rule, could have required 3, 4, or 5 votes. At the time of

---

**6.** In *Thompson,* the defendant had been charged with a felony and tried in the territory of Utah before a jury composed of twelve persons. That conviction was set aside, and after Utah was admitted to the Union, the defendant was retried and convicted under a new law which required a jury composed of only eight persons. The United States Supreme Court held that Thompson's right to a twelve-member jury vested at the time of his first trial and that the application of an eight person jury was in violation of the prohibition against ex post facto laws.

**7.** In overruling *Thompson,* the Supreme Court stated that a retroactive change reducing the size of juries in criminal cases from 12 persons to 8 would not affect the ex post facto clause. 497 U.S. at 51–52, 110 S.Ct. 2715.

Gilmore's parole eligibility, the board consisted of only three members and the board had adopted an internal policy requiring that all three members must agree before a prisoner could be placed on parole.

Unlike the statutory law involved in *Steigler* which raised the required vote, the *Gilmore* court reasoned that Kansas law did not fix the voting requirements for the board, but left that matter to the discretion of the board itself. *Id.* As a result, the court concluded that the change was procedural, not substantive, and was, therefore, not an unconstitutional ex post facto violation. *Id.*

■ Here, the statute as it existed at the time of Myers' conviction and following the 1986 amendments merely set the minimum number of votes needed to grant parole. Beyond that, the actual voting requirements were left to the discretion of the Board. Although the three-vote requirement may appear to make it more difficult for Myers and others like him to be paroled, it does not alter the criteria which the Board applies to determine eligibility for parole, nor does it affect Myers' original sentence. The three-vote requirement is merely a procedural change which does not violate the ex post facto clause.

We, therefore, conclude that Myers will be unable to state a claim that the retroactive application of the Board's policy requiring three votes before a violent offender may be paroled violates the ex post facto clause.

### c. Victims' Rights—Notice and Response Requirements

■ Myers next contends that the 1986 amendment adding the requirement that victims receive notice and have an opportunity to respond before the Board may grant parole is in violation of the ex post facto clause. He contends that the law disadvantages him by making it far more difficult for him to gain release. He further contends that the law is retrospective because prior to this amendment, parole decisions were based exclusively upon factors of rehabilitation and specific deterrence, and not considerations of · retribution. We disagree.

Section 22.1 of the Parole Act,[8] allows victims or their families the right to voice their objections to the granting of an application for parole. Although this amendment may have a potentially adverse impact on Myers and other prisoners who seek parole, the amendment does not alter any substantial rights. Section 22.1 merely alters parole procedures by requiring the Board to notify the crime victim of a prisoner's scheduled parole hearing and permitting the victim or · his/her family the opportunity to voice any objections to a prisoner's release. While this provision was not in existence at the time Myers committed his offense, victims were never prohibited from offering their statements to the Board should they have chosen to do so. Section 22.1 merely codifies a victim's right to participate in the parole process and does not violate the ex post facto clause. We further note that similar victim notification laws have withstood ex post facto attacks. *See Mosley v. Klincar,* 947 F.2d 1338 (7th Cir.1991); *Alston,* 791 F.Supp. 569 (D.Md., 1992).

We, therefore, conclude that Myers will be unable to state a claim that the application of section 22.1 of the Parole Act was a violation of the ex post facto clause.

Accordingly, Respondents' preliminary objections to Myers' ex post facto claims are sustained.

### 3. EQUAL PROTECTION

Respondents further contend that Myers has failed to state a cause of action for a violation of his equal protection rights under the Fourteenth Amendment. We agree.

### a. Classification Between Violent And Nonviolent Offenders

Myers contends that the amendments to the Parole Act and the internal policies of the Board creating a classification between violent and nonviolent offenders are in violation of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States. We disagree.

---

**8.** *Added by* the Act of October 9, 1986, P.L.1424,    *as amended,* 61 P.S. § 331.22a.

The Equal Protection Clause of the Fourteenth Amendment forbids a state to "deny to any person within its jurisdiction the equal protection of the laws." However, this prohibition against the denial of the equal protection does not mean that a State may not recognize differences and create appropriate classifications. So long as a classification is reasonable and based upon some ground of difference having a fair and substantial relation to the objective of the classification so that similarly situated individuals are treated alike, it is permissible. *F.S. Royster Guano Company v. Virginia*, 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989 (1920); *Commonwealth v. Daniel*, 430 Pa. 642, 243 A.2d 400 (1968). Under the rational basis test [9] "if the justification for the disparate treatment is neither arbitrary nor capricious, but grounded on some reasonable policy, there is no denial of equal protection of the laws." *Jamieson v. Robinson*, 641 F.2d 138, 142 (3d Cir.1981).

Here, the amendments to the Parole Act and internal policies of the Board make a classification between violent and nonviolent offenders. *See*, e.g., section 34.1(a)(3) of the Parole Act. The classification is based on the nature of the offense. *See* section 34.1(b) of the Parole Act, 61 P.S. § 331.34a(b). As a result, violent offenders are subjected to a more stringent standard of review for parole eligibility than nonviolent offenders.

The purpose behind the classification and the disparate treatment between the violent and nonviolent offenders is the protection of public safety. The rationale is that one who commits a "crime of violence" poses a greater threat to the public safety than one who commits a nonviolent offense and, therefore, should be examined more closely before being released on parole. This justification is neither arbitrary nor capricious, but grounded on reasonable policy. We, therefore, conclude that the classification and disparate treatment between violent and nonviolent offenders do not offend the concept of due process or equal protection of the law.

### b. Disparate Treatment Between Similarly Situated Individuals

Myers next argues that the amendments to the Parole Act and policies of the Board have imposed different standards of review for similarly situated individuals so as to create arbitrary and unreasonable classifications without a rational basis. Specifically, he contends that his co-defendant's application for parole was reviewed and granted on a different standard of review in violation of equal protection clause. We disagree.

In order to properly state an equal protection claim, a plaintiff must allege that he is receiving different treatment from that received by other similarly situated individuals. *Capital Cities Media, Inc. v. Chester*, 797 F.2d 1164 (3d Cir.1986). A plaintiff must show intentional discrimination because of the membership in a particular class, not merely that he was treated unfairly as an individual. *Id.* Assertions of intentional disparate treatment must be supported by specific factual allegations. *See Williams v. Patton*, 410 F.Supp. 1, 3 (E.D.Pa.1976). Conclusory contentions of constitutional violations without factual support do not establish a constitutional deprivation sufficient to withstand a demurrer. *See id.*

In the present case, Myers has not alleged any facts which would tend to support his claim for a violation of equal protection. Myers has merely alleged that his co-defendant was referred to a community corrections center and was thereafter released on parole at a time when the Board only required two signatures in order to grant an application for parole. However, Myers' has failed to supply specific factual allegations that would constitute a violation of equal protection. In the parole setting, where decisions to parole are highly individualized and discretionary, it is difficult to see how any two prisoners may be regarded as similarly situated for the purposes of equal protection. We, therefore, conclude that Myers will be unable to establish a constitutional deprivation sufficient to withstand a demurrer.

**9.** The rational basis test is the appropriate standard of review in this case as Myers does not allege discrimination implicating either a suspect classification or a fundamental interest, so as to require strict scrutiny or a compelling state interest.

**800**

Accordingly, Respondents' preliminary objections to Myers' equal protection claims are sustained.

### CONCLUSION

Respondents' preliminary objections in the nature of a demurrer are sustained and Myers' petition for review is dismissed with prejudice for failure to state a claim upon which relief may be granted.

### *ORDER*

AND NOW, this 15th day of May, 1998, the preliminary objections in the nature of a demurrer filed by Respondents to Myers' petition for review are sustained. Myers' petition for review is dismissed with prejudice.