IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tyree Lawson,                      :

              Appellant           :

                           :    No. 1221 C.D. 2019

             v.                 :

                           :    Submitted: August 14, 2020

Correctional Officer Menteer,      :

Correctional Officer Kimerle,       :

Lt. Dickey and Superintendent    :

Overmyer of SCI Forest,          :

Sued in their Individual Capacities   :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge[1]
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge

## *OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                          FILED: February 4, 2021

Tyree Lawson (Lawson) appeals from the March 13, 2019 order of the Court of Common Pleas of the 37th Judicial District, Forest County Branch[2] (trial court), which sustained the Preliminary Objections (POs) filed by Correctional Officers Menteer and Kimerle, Lieutenant Dickey, and Superintendent Overmyer, as employees of the Pennsylvania Department of Corrections (DOC) (collectively, DOC

---

[1] This case was assigned to the opinion writer before January 4, 2021, when Judge Leavitt completed her term as President Judge.

[2] Pennsylvania's 37th Judicial District encompasses Forest and Warren Counties.

Defendants)[3] and dismissed Lawson's complaint. Before this Court, DOC Defendants filed a motion to quash Lawson's appeal as untimely. For the following reasons, we grant the DOC Defendant's motion to quash.

On March 23, 2018, Lawson filed a civil complaint in the trial court against DOC Defendants. (Record Item No. 1, Complaint ¶¶3-6.) Lawson made the following allegations in his complaint: Lawson was confined by the DOC at State Correctional Institution (SCI) Graterford. (Complaint ¶2.) On or around August 2, 2013, Lawson's mother sent him two hundred dollars ($200.00) in order to purchase a television through the DOC commissary. (Complaint ¶8.) On December 2, 2016, Officer Menteer entered Lawson's cell and inspected his television. (Complaint ¶11.) Officer Menteer told Lawson that his television would have to be "updated." (Complaint ¶12.) Lawson discovered that the "update" consisted of filling the USB media ports on inmates' televisions with liquid epoxy, rendering them inoperable. (Complaint ¶14.) Lawson filed a grievance contesting these actions, which was denied on December 5, 2016. (Complaint ¶¶15-17.)

On December 6, 2016, Lawson brought his television to Officer Kimerle under protest. (Complaint ¶¶18-20.) Lawson explained to both Lieutenant Dickey and Officer Kimerle that he intended to bring his television with him after he was released from DOC custody, and that the television bore sentimental value because it was the last thing his mother purchased for him before she died. (Complaint ¶22.) Lieutenant Dickey told Lawson that he was instructed by Superintendent Overmyer to "destroy and disable" the USB media ports in inmates' televisions. (Complaint

---

[3] The complaint also named DOC Secretary John Wetzel as a defendant. As explained below, Lawson eventually discontinued the action against Secretary Wetzel.

2

¶23.) Lawson's television was confiscated by Lieutenant Dickey and Officer Kimerle. (Complaint ¶24.)

In terms of relief, Lawson maintained that all defendants "consciously engaged in conduct," which was outside of the scope of DOC employee duties and ethical standards. (Complaint ¶27.) Lawson averred that at all times DOC Defendants "officially oppressed, intimidated, destroyed, destructed[,] and caused defective [sic] and tainted the sentimental value of [his property]," causing him to suffer emotional and mental harm and any of the same harm he was likely to experience in the future. (Complaint ¶28.) Lawson demanded damages in the amount of two thousand and five hundred dollars, punitive damages due to DOC Defendants' "malicious and wanton" violations of his rights, and other relief as deemed appropriate by the court. (Complaint ¶¶30-32.)[4]

On March 23, 2018, Lawson filed a motion to proceed *in forma pauperis*, which was granted by the trial court on April 24, 2018. (Record Item Nos. 2-3.) On May 21, 2018, DOC Defendants filed a notice of removal in the trial court pursuant to 28 U.S.C. §1446, due to federal questions raised in Lawson's complaint. This case was then removed to the Western District of Pennsylvania. By order entered on November 6, 2018, the Honorable Richard A. Lanzillo remanded the matter to the trial court.

On November 28, 2018, DOC Defendants filed POs to Lawson's complaint. The POs first explained important procedural developments that occurred while this case was pending in the federal district court. The POs indicate that on

---

[4] Lawson appears to have misnumbered the paragraphs in his prayer for relief as 1-4, instead of 30-33. For clarity, these paragraphs are herein cited as 30-33.

June 12, 2018, Lawson filed a motion seeking to (1) remove Secretary Wetzel as a defendant, (2) remove all causes of action that raised a federal question, and (3) amend his complaint. (POs Exhibit C.) The POs indicate that the district court granted Lawson's motion to file an amended complaint, and granted his motion to remove Secretary Wetzel as a defendant. (POs Exhibit B.) The amended complaint, which removed Lawson's federal claims states, in full:

> This intentional [and] negligent tort action filed by [Lawson], *pro se* seeking redress of grievances and monetary damages stems in response to herein named defendants outside [of] their scope of employment[,] **gross abuse of powers[,] threats[,] intentional trespass[, and] intimidation[,] amounting [to] unwarranted official oppression[,] and destruction of [Lawson's] personal property** without a modicum of due process in violation of [Article I, Section 9 of the Pennsylvania Constitution, Pa. Const. art. I §9.]

(Record Item Nos. 8, 15; POs Exhibit C) (emphasis added).

The POs, in the nature of a demurrer, asserted that Lawson's amended complaint failed to set forth a cause of action upon which relief could be granted.[5] DOC Defendants argued that intentional tort claims against DOC employees acting within the scope of their employment, such as the one pled by Lawson, are barred by the doctrine of sovereign immunity. Further, DOC Defendants argued that

---

[5] As is the case here, it is well settled that the affirmative defense of sovereign immunity may be raised by preliminary objections "where it is apparent on the face of the pleading that the cause of action does not fall within the statutory exceptions to sovereign immunity." *Kull v. Guisse*, 81 A.3d 148, 160 (Pa. Cmwlth. 2013) (citing *Wurth by Wurth v. City of Philadelphia*, 584 A.2d 403 (Pa. Cmwlth. 1990)). *See also Thompson v. Puskar* (Pa. Cmwlth., No. 1270 C.D. 2013, filed Dec. 27, 2014) (unreported) (same).

4

Pennsylvania Courts do not recognize a cause of action for monetary damages under the Pennsylvania Constitution for a violation of due process rights. Finally, the DOC maintained that, even if Lawson successfully asserted a claim under the Pennsylvania Constitution, it is well-settled that the confiscation of a prisoner's property does not violate due process rights so long as a meaningful post-deprivation remedy is provided.

On March 13, 2019, the trial court issued an order granting DOC Defendants' POs. (Record Item No. 16, 17, 3/13/19 Trial Cr. Order at 1.) The trial court concluded that as state employees acting within the scope of their employment, DOC Defendants were entitled to sovereign immunity against Lawson's claims of intentionally tortious conduct. *Id.* The trial court concluded that Lawson failed to show that DOC Defendants acted outside of the scope of their employment. *Id.* Furthermore, the trial court determined that Lawson failed to establish a violation under the Pennsylvania Constitution because the DOC's grievance procedure satisfies due process concerns in this context. *Id.* Finally, the trial court noted that monetary relief is not available as a remedy for due process violations. *Id.* Accordingly, the trial court dismissed Lawson's amended complaint. *Id.* Lawson filed a motion to alter and amend the judgment on March 25, 2019.[6] (Record Item No. 18.)

Lawson filed a notice of appeal from the trial court's March 13, 2019 order. Although Lawson appears to have written the date "4-9-2019" on the notice of appeal, it was not stamped as filed with the trial court until April 22, 2019, at 11:00 a.m. (Record Item No. 19.) Lawson simultaneously filed a praecipe to proceed *in*

---

[6] The motion to alter and amend complained of alleged errors that the trial court made in its March 13, 2019 decision and requested the court to reconsider that decision.

*forma pauperis*. (Record Item No. 20.) Both documents were sent in an envelope postmarked April 19, 2019. (Record Item Nos. 19-20.)

On April 24, 2019, the trial court dismissed the notice of appeal as untimely. (Record Item No. 21, 4/24/19 Trial Ct. Order at 1.) The trial court stated that, because its decision was filed on March 13, 2019, the final day Lawson's notice of appeal could have been filed was on April 12, 2019. *Id*. The trial court reasoned that, under the prisoner mailbox rule, a legal document is considered to be filed on the date it is deposited in the prison mailbox or delivered to the proper prison authority. *Id*. The trial court pointed out that although Lawson dated his notice of appeal April 9, 2019, it was sent in the same envelope as his April 18, 2019 praecipe to proceed *in forma pauperis* and supporting affidavit. *Id*. The trial court also explained that the certificate of service that went along with the praecipe to proceed *in forma pauperis* was dated April 9, 2019. *Id*. Finally, the trial court noted that the envelope in which all of these documents were sent was postmarked April 19, 2019. Thus, the trial court dismissed the notice of appeal as untimely.

Lawson subsequently filed a motion to "alter and amend" the trial court's "April 23, 2019 Judgment." (Record Item No. 22.) Lawson alleged that, on March 21, 2019, he filed a timely notice of appeal via First-Class Mail by depositing the same in the "custody, care, and control, of [the DOC]." (Record Item No. 22.) He maintains that, because the notice of appeal was not accompanied with the correct filing fees, the 37th Judicial District Clerk of Courts (Clerk) forwarded Lawson the materials to praecipe to proceed *in forma pauperis*, which included a copy of Lawson's "first appeal." *Id*. Lawson alleged that, on April 18, 2019, he "returned" the *in forma pauperis* application to the Clerk. *Id*. Attached to the motion were three cash slips. The first, dated March 20, 2019, was addressed to DOC Defendants'

6

Counsel. *Id*. The second, dated March 21, 2019, was also addressed to the Clerk. *Id*. The third, dated April 18, 2018, was addressed to the Clerk. *Id*.

On May 14, 2019, the trial court granted Lawson's request to proceed *in forma pauperis*, and rescinded its April 24, 2019 order. (Record Item Nos. 23-24.) That same day, the trial court also ordered Lawson to file a statement of errors complained of on appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 1925(b). (Record Item No. 25.) Lawson filed his statement, directing his appeal to the Superior Court, and the trial court filed its memorandum opinion pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 1925(a). (Record Item No. 26.) In addressing the merits of Lawson's cause of action, the trial court largely relied on the same legal basis that it did in its March 13, 2019 opinion. (Record Item No. 27, 6/21/19 Trial Ct. Op. at 3-4.) However, the trial court concluded that the actions described in Lawson's original complaint could only be classified as intentional conduct on behalf of DOC Defendants, and that nowhere in his original complaint does he even mention the term negligence, nor does he aver that the relevant conduct was negligent. *Id*. at 3. With regard to the amended complaint, the trial court similarly concluded that Lawson merely characterized the tort action as sounding in negligence, but summarized the same allegations in his original complaint, which alleged intentional actions. *Id*. at 3. The instant matter was docketed in the Superior Court on June 24, 2019, and was transferred to this Court on July 24, 2019.[7] (Record Item No. 28.)

---

[7] This Court has jurisdiction over these matters pursuant to Section 762 of the Judicial Code, 42 Pa. C.S. §762.

By order dated September 16, 2019, we required the parties to address the timeliness of Lawson's appeal in their principal briefs on the merits or by appropriate motion. On December 12, 2019, DOC Defendants filed a motion to quash Lawson's appeal as untimely. On January 2, 2020, we ordered that the motion to quash be decided with the merits of Lawson's appeal.

## Discussion

On appeal,[8] Lawson raises the single issue of whether the trial court erred as a matter of law by granting DOC Defendants' POs. However, along with this issue, per our January 2, 2020 order, we must also decide DOC Defendants' motion to quash. Accordingly, we first turn to DOC Defendants' contention that Lawson's appeal was untimely.

On page five of his brief, Lawson appears to make a sworn affidavit as to why his appeal was timely. Lawson asserts that he timely filed the notice of appeal on March 21, 2019, but inadvertently failed to send the notice of appeal with his request to proceed *in forma pauperis*. Lawson appears to argue that the Clerk

---

[8] This court's scope of review of a decision by a trial court is limited to a determination of whether the trial court abused its discretion, committed an error of law, or whether constitutional rights were violated. *Long v. Thomas*, 619 A.2d 394, 396 (Pa. Cmwlth. 1992), *appeal denied,* 631 A.2d 1012 (Pa. 1993). Where the appeal challenges a trial court's order sustaining preliminary objections, we must determine "whether on the facts averred, the law states with certainty that no recovery is possible." *Hawks by Hawks v. Livermore*, 629 A.2d 270, 271 n.3 (Pa. Cmwlth. 1993). In reviewing preliminary objections, only facts that are well pled, material, and relevant are considered true, and those preliminary objections which are clear and free from doubt will be sustained. *Triage, Inc. v. Department of Transportation*, 537 A.2d 903, 907 n.7 (Pa. Cmwlth. 1988). However, unwarranted inferences, conclusions of law, argumentative allegations or expressions of opinion need not be accepted. *Myers v. Ridge*, 712 A.2d 791 (Pa. Cmwlth. 1998).

returned his notice of appeal with an *in forma pauperis* request form, which he promptly returned, and therefore, his appeal was timely.

DOC Defendants argue that this Court lacks jurisdiction over the appeal because it was untimely filed. DOC Defendants argue that, because the trial court's final order was entered on March 13, 2019, Lawson had 30 days to file his appeal, which ended on April 12, 2019. DOC Defendants point out that although Lawson dated his notice of appeal April 9, 2019, the envelope in which the notice was contained was postmarked as April 19, 2019, and was not received by the trial court until April 22, 2019. Additionally, DOC Defendants note that the notice of appeal was mailed in the same envelope as Lawson's praecipe to proceed *in forma pauperis*, which was dated April 18, 2019. Accordingly, DOC Defendants assert that, even with the benefit of the prison mailbox rule, Lawson cannot prove that the notice of appeal was deposited prior to the appeal deadline.

DOC Defendants also refute Lawson's contention that his appeal was timely filed on March 21, 2019, due to the fact that he presented a verified prison cash slip dated March 21, 2019, and a cash slip dated April 18, 2019. DOC Defendants argue that Lawson's appeal could not have been filed on March 21, 2019, because his notice of appeal was dated April 9, 2019. Furthermore, DOC Defendants argue that the March 21, 2019, cash slip cited as evidence of a timely appeal actually corresponds with Lawson's motion to alter and amend, which was dated March 20, 2019, and was filed on March 25, 2019. Finally, DOC Defendants refute Lawson's contention that his notice of appeal was timely filed on April 9, 2019, but was returned to him for failing to pay the filing fees, because no record evidence supports this contention.

9

Pennsylvania Rule of Appellate Procedure 903(a) requires that a notice of appeal "shall be filed within 30 days after the entry of the order from which the appeal has been taken." Pa.R.A.P. 903(a). A party waives the right to appeal an order if the notice of the appeal is not filed within 30 days after entry of the relevant order. *Koken v. Colonial Assurance Company*, 885 A.2d 1078, 1101 (Pa. Cmwlth. 2005). Importantly, the timeliness of an appeal is jurisdictional, and this Court must quash an untimely appeal absent a showing of fraud or a breakdown in the court's operation. *City of Philadelphia v. Frempong*, 865 A.2d 314, 317 (Pa. Cmwlth. 2005). Because Lawson is a *pro se* prisoner, the prisoner mailbox rule applies. *Commonwealth v. Jones*, 700 A.2d 423, 426 (Pa. 1997). In *Kittrell v. Watson*, 88 A.3d 1091, 1097 (Pa. Cmwlth. 2014), we explained that

> [u]nder the prisoner mailbox rule, a legal document is deemed "filed" on the date it is delivered to the proper prison authority or deposited in the prison mailbox. *Commonwealth v. Castro*, 766 A.2d 1283, 1287 (Pa. Super. 2001) ("filing" focuses "upon the act of the litigant in placing the document in the hands of the appropriate" office or officer rather than actual receipt of the document). A cash slip constitutes sufficient evidence to show compliance with the prisoner mailbox rule. [*Jones*, 700 A.2d at 426.] An affidavit as to the date of mailing may also be considered. *Id.* In order to benefit from the rule, [the inmate] bears the burden of proving that he timely deposited his . . . appeal in the prison mailbox.

First, Lawson directs us to the cash slip dated March 21, 2019, as evidence that his appeal was timely. This is belied by the record. Lawson's notice of appeal is dated April 9, 2019. Further, this cash slip coincides with Lawson's March 25, 2019 motion to alter and amend. The envelope containing the motion to alter and amend is postmarked March 22, 2019. It does not appear from the record that a

notice of appeal was filed with this motion or sent in the same envelope. Alternatively, Lawson maintains that on or about March 21, 2019, he filed a notice of appeal but inadvertently failed to send a request to proceed *in forma pauperis*, and therefore, his filing was rejected. There is no evidence in the record to corroborate this assertion. As stated, the March 21, 2019 date coincides with Lawson's filing of a motion to alter and amend. Furthermore, the record is devoid of any evidence indicating that Lawson filed a notice of appeal and it was rejected because he failed to seek to proceed *in forma pauperis*. There is no correspondence in the record indicating that this happened.

Contrary to Lawson's contentions, the record demonstrates that Lawson's appeal was sent in the same envelope as his praecipe to proceed *in forma pauperis*, which was dated April 18, 2019. The corresponding envelope was postmarked April 19, 2019. A cash slip dated April 18, 2019, corresponds with this envelope and enclosed materials. Thus, it is apparent from the record that Lawson's appeal was untimely.

In his reply brief, Lawson reverses course from his principal brief and alleges that it was on April 9, 2019, that he filed a timely notice of appeal using a "free First Class Prisoner 1[]oz[.] postage-envelopes." (Lawson's Reply Br. at 5.) He alleges that, on April 18, 2019, the Clerk returned his notice of appeal with an application to proceed *in forma pauperis*. He alleges that he made the "obvious mistake" indicating that the March 21, 2019 cash slip supported the timely filing of his appeal. *Id*. at 6. Alleging another mistake, Lawson explains that he forgot that he used one of his eight "monthly free envelopes" which do not require a cash slip for postage, and this fact prevents him from demonstrating the April 9, 2019 mailing of his notice of appeal. *Id*. at 11.

11

To support his claim, Lawson asserts that he filed both a Right-to-Know Law[9] (RTKL) request on January 2, 2020, and a DOC inmate request to the mail room supervisor on March 2, 2020, in order to gather evidence to establish that he received correspondence from the Clerk rejecting his April 9, 2019 notice of appeal for failing to include an application to proceed *in forma pauperis*. Here Lawson points to documents received from the RTKL request and the inmate request form, which show that he received mail from the Clerk on April 18, 2019, the day he alleged he was notified that his notice of appeal was not accepted because he did not also file an application to proceed *in forma pauperis*. *See* (Lawson's Reply Br. at App. H – J.) Lawson points to the document found at Appendix I of his reply brief, which shows that he received mail. *Id*. However, he admits that this document does not show the "detailed information" that would have demonstrated that he was directed by the Clerk to submit a request to proceed *in forma pauperis*. *Id*. at 14. Thus, he points to Appendix J, a response from DOC staff, which indicates that he received a response from the Clerk on April 18, 2019, which he alleges proves he filed his appeal on time.

These documents do not appear in the record and are merely attached to his brief. The documents to which Lawson is referring were not created until long after the record was received by this Court on September 12, 2019. It is well-established that facts outside of the record may not be considered. *HYK Construction Company, Inc. v. Smithfield Township*, 8 A.3d 1009, 1016 (Pa. Cmwlth. 2010). "It is of course fundamental that matters attached to or contained in briefs are not evidence and cannot be considered part of the record either before an administrative agency or

---

[9] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.

on appeal." *Zinman v. Department of Insurance*, 400 A.2d 689 (Pa. Cmwlth. 1979). *See also Thomas v. Grimm*, 155 A.3d 128, 134 (Pa. Cmwlth. 2017) (same). As these documents are not in the record, we will not consider them on appeal.[10]

In sum, Lawson has failed to provide any correspondence from the Clerk indicating that he appealed on April 9, 2019, and his appeal was rejected for failing to file an application to proceed *in forma pauperis*. The documents referred to in his reply brief only indicate that he received correspondence from the Clerk on April 18, 2019, but do not in any manner indicate what he received. Accordingly, we grant the application to quash and dismiss Lawson's appeal as untimely.

Notwithstanding, even if Lawson's appeal was timely, we would conclude that he is not entitled to relief because DOC Defendants enjoy sovereign immunity from Lawson's claims. The DOC Defendants argue that the merits of Lawson's underlying claim do not pass muster. DOC Defendants argue that Lawson is only able to recover for negligent actions by DOC employees, and he only pled intentional acts which are barred by sovereign immunity. Specifically, DOC Defendants argue that because they were acting within the scope of their employment, and allegedly only committed intentional acts, any liability for these acts is shielded by sovereign immunity.

---

[10] Lawson requests that we take judicial notice of these documents. We decline to do so. "Courts may take judicial notice of matters that are not reasonably disputed." *Crocco v. Pennsylvania Department of Health*, 214 A.3d 316, 323 (Pa. Cmwlth. 2019) (citing Pa.R.E. 201(b)). "[J]udicial notice is generally exercised when the fact is so well known that formal introduction of evidence in support of it is unnecessary." *Crocco*, 214 A.3d at 323 (quoting *Castello v. Unemployment Compensation Board of Review*, 86 A.3d 294, 299 (Pa. Cmwlth. 2013)). The facts at issue are certainly subject to reasonable dispute and are not generally known so that formal introduction of evidence in support is unnecessary.

Lawson avers that the filling of a USB media port with epoxy constitutes an act outside the scope of sovereign immunity. He avers that DOC Defendants' conduct is actionable because it violates the duties charged to the DOC and the DOC's Code of Ethics, which requires the DOC to handle inmate property with extreme care. *See Pennsylvania DOC Code of Ethics*, Section (B)(7).[11] Lawson alleges that the "vandalism and destruction," and "gross-destruction" of his television was outside the scope of DOC Defendants' duties.

The doctrine of sovereign immunity has been reaffirmed[12] under Article I, Section XI of the Pennsylvania Constitution,[13] is statutorily governed by 1 Pa. C.S. §2310, and has been waived only in the instances enumerated in what is known as the Sovereign Immunity Act, 42 Pa. C.S. §8522. Section 2310 explains that the

---

[11] This policy states as follows:

> The personal property of inmates will be handled with extreme care and disposed of only by property designated authority in a manner designated by official [DOC] policy. Similarly no employee may assume the right of ownership of property owned by fellow employees, the state[,] or by inmates; theft or abuse of property or equipment is prohibited.

*Pennsylvania DOC Code of Ethics*, Section (B)(7), which may be viewed at: https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/Code%20of%20Ethics.pdf (last accessed February 3, 2021).

[12] The doctrine of sovereign immunity existed at common law; however, our Supreme Court in *Mayle v. Pennsylvania Department of Highways*, 388 A.2d 709 (Pa. 1978), abrogated it, but the legislature subsequently reinstated it. *See* Act of September 28, 1978, P.L. 788, No. 152, §2, 42 Pa. C.S. §5110, reenacted at 42 Pa. C.S. §8522.

[13] Article I, Section XI of the Pennsylvania Constitution, in relevant part, provides that "[s]uits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct." PA. CONST. art. I, §11.

"Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." 1 Pa. C.S. §2310. The Sovereign Immunity Act governs waiver of sovereign immunity. Specifically,

> [s]ection 8522 of the Sovereign Immunity Act waives 'immunity as a bar to an action against Commonwealth parties, **for damages arising out of a negligent act** where the damages would be recoverable under the common law or a statute creating a cause of action if the injury [was] caused by a person not having available the defense of sovereign immunity, for specifically enumerated categories of acts.

*Paluch v. Department of Corrections*, 175 A.3d 433, 437-38 (Pa. Cmwlth. 2017) (quoting 42 Pa. C.S. §8522). Section 8501 of the Sovereign Immunity Act defines a "Commonwealth party" as "a Commonwealth agency and any employee thereof, but only with respect to an act within the scope of his office or employment." 42 Pa. C.S. §8501. Thus, "sovereign immunity may be overcome where the party can establish: (1) a common law or statutory cause of action under which damages could be recoverable if not for the immunity defense, and (2) the alleged negligent act falls within one of the nine specific exceptions provided in 42 Pa. C.S. §8522(b)." *Department of Corrections v. Tate*, 133 A.3d 350, 359 (Pa. Cmwlth. 2016).

However, "sovereign immunity is **not** waived for **intentional acts** committed by a Commonwealth employee acting within the scope of his or her employment." *Paluch*, 175 A.3d at 438 (emphasis added) (citing *La Frankie v. Miklich*, 618 A.2d 1145, 1149 (Pa. Cmwlth. 1992)). Thus, sovereign immunity is

15

only waived for negligent acts, not intentional acts. Immunity is waived under section 8522(b)(3) of the Sovereign Immunity Act, relevantly, as follows:

> (3) Care, custody or control of personal property.—The care, custody or control of personal property in the possession or control of Commonwealth parties, including Commonwealth-owned personal property and property of persons held by a Commonwealth agency, except that the sovereign immunity of the Commonwealth is retained as a bar to actions on claims arising out of Commonwealth agency activities involving the use of nuclear and other radioactive equipment, devices and materials.

42 Pa. C.S. §8522(b)(3). Although Lawson has labelled his tort claim to include both intentional and negligent acts, a plain reading of his assertions, as detailed above, reveal that he only alleges intentional acts. Specifically, Lawson alleges that DOC Defendants engaged in "intentional trespass," "intimidation," "official oppression," and the "destruction" of his personal property. (Record Item Nos. 8, 15, Amended Complaint.) The deliberate "destruction" of his property by DOC Defendants is not negligent, but rather intentional.

Specifically, the deliberate confiscation of Lawson's television and subsequent pouring of epoxy into a USB media port is not a negligent act, evidencing careless or accidental conduct. As Lawson described in his brief, DOC Defendants "were to remove television USB ports, but instead decided to fill them with glue [and] upon [the] same instructions authorized through Superintendent Overmyer **forcibly seized [the] same and filled** [his] television with [e]poxy [c]ement [g]lue." (Lawson's Br. at 7.) This constituted intentional behavior on behalf of DOC Defendants.

16

Furthermore, Lawson's contention that he established negligence because the DOC Ethics Code requires DOC staff to handle inmate property with care is misplaced. Administrative regulations or policies do not create any rights in inmates. *Bullock v. Horn*, 720 A.2d 1079 (Pa. Cmwlth. 1998). Thus "[a] review of the [Ethics Code], . . . reflects that the [Ethics] Code is identified as 'rules and regulations' in the document itself. . . . [T]he [Ethics Code] does not create a clear right to relief in [petitioner]." *Tillman v. Pennsylvania Department of Corrections* (Pa. Cmwlth., No. 327 M.D. 2016, filed June 9, 2017), slip op. at 6 n.6, *aff'd*, 189 A.3d 423 (Pa. 2018); *See Ross v. Marsh* (Pa. Cmwlth., No. 182 M.D. 2019, filed Oct. 11, 2019) (unreported).[14]

_____

PATRICIA A. McCULLOUGH, Judge

---

[14] Finally, we need not address Lawson's allegations that DOC Defendants violated his rights under the Pennsylvania Constitution because Lawson abandoned these issues on appeal by failing to make any argument in his brief in support thereof. Issues raised on appeal, but subsequently abandoned in an appellate brief, are waived. *See Commonwealth v. Boxley*, 948 A.2d 742, 749 n. 7 (Pa. 2008) (refusing to address a claim that appellant raised before the trial court but abandoned in his appellate brief).

Nevertheless, these constitutional claims do not confer the right to damages, and Lawson has an adequate due process remedy through inmate grievance channels. In *Shore v. Pennsylvania Department of Corrections*, we explained that "[i]n addressing the issue, the courts have repeatedly held that inmate grievance systems are an adequate post-deprivation remedy . . . ." 168 A.3d 374, 384 (Pa. Cmwlth. 2017). Furthermore, under *Jones v. City of Philadelphia*, 890 A.2d 1188, 1208 (Pa. Cmwlth. 2006), "[N]either Pennsylvania statutory authority, nor appellate case law has authorized the award of monetary damages for a violation of the Pennsylvania Constitution."

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tyree Lawson,               :
              Appellant     :
                         :    No.  1221 C.D. 2019
           v.              :
                         :
Correctional Officer Menteer,    :
Correctional Officer Kimerle,     :
Lt. Dickey and Superintendent   :
Overmyer of SCI Forest,         :
Sued in their Individual Capacities  :

## ***ORDER***

       AND NOW, this 4th day of February, 2021, the motion to quash filed by Correctional Officer Menteer, Correctional Officer Kimerle, Lieutenant Dickey, and Superintendent Overmyer is GRANTED.  The appeal of Tyree Lawson is QUASHED as untimely.

 

                                _____

                                PATRICIA A. McCULLOUGH, Judge